**STATE of Missouri, Respondent,**

v.

**Terry Eugene SAVAGE, Appellant.**

**No. KCD 26846.**

Missouri Court of Appeals,
Kansas City District.

March 31, 1975.

Kenneth K. Simon, Kansas City, for appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special JJ.

ROBERT R. WELBORN, Special Judge.

Terry Eugene Savage was charged in the Jackson County Circuit Court with robbery in the first degree and assault with intent to kill, with malice. The charges were consolidated for trial, which resulted in a jury verdict of guilty on each charge. The court, under the Second Offender Act, sentenced the defendant to consecutive 20–year terms.

On December 31, 1970, "a colored fellow" entered Traxler's Pharmacy in Kansas City and ordered a package of cigarettes from the proprietor, Seymour Traxler. When Traxler turned to deliver the cigarettes, the "customer" was holding a gun. He told Traxler to open the cash register. The robber took money from the register, put it in a sack, and began to tape Traxler's hands. At that time a police officer, Sergeant Thomas H. Ratterman, responding to an alarm tripped by Traxler, entered the store. The robber fired three times at Sergeant Ratterman and the officer returned the fire. Neither man was hit. The robber threw his gun from behind a counter and said "I quit." The officer placed him under arrest. A pillow case containing currency was found near the cash register.

Savage was charged with robbery from Traxler and with assault with intent to kill with a deadly weapon, with malice, against Ratterman. Traxler, Sergeant Ratterman and another officer who came to the scene testified at the trial of the charges. The officers unequivocally identified appellant as the man arrested at the scene. Traxler was unable to make an identification. No evidence was offered on behalf of defendant.

On this appeal, the first contention is that the trial court erred in failing to grant a new trial because of prejudicial argument by the prosecuting attorney.

In his opening summation, the prosecutor, in recalling Traxler's testimony, referred to the robber on seven occasions as a "black man." No objection was made. In his motion for new trial, appellant requested a new trial "on the grounds of over emphasis by the Prosecutor in closing argument of Defendant's race by reference to 'that black man' repeatedly in summing up evidence before the * * * all white jury."

■ The lack of objection at trial precludes reliance on this ground for relief in this court. State v. Brogan, 488 S.W.2d 623, 625[1] (Mo.1973); State v. Carter, 478 S.W.2d 358, 361[4] (Mo.1972); State v. Richards, 467 S.W.2d 33, 37[7] (Mo. 1971); State v. Davis, 448 S.W.2d 892, 894[2] (Mo.1970). The case of State v. Sheard, 276 S.W.2d 191 (Mo.1955), cited by appellant, demonstrates that any error in the use of language such as that here objected to is correctable upon proper objection to the trial court. Having failed to make objection at the time of the remarks, there is no basis for a finding of error on the part of the trial court.

■ Appellant does not suggest that the complaint justifies relief under the plain error rule. Rule 27.20(c), V.A.M.R. The remarks, in any event, would not have resulted in "manifest injustice" or a "miscarriage of justice." The only issue for the jury was the innocence or guilt of appellant. The evidence of guilt was overwhelming. There is no indication of a motive on the part of the prosecutor to derogate appellant because of his race. The prosecutor merely was describing appellant in approximately the language of Traxler to whose testimony he was referring, and who did not, in fact, identify appellant.

Appellant next complains of error in the overruling of his motion to dismiss for failure to afford him his constitutional right to a speedy trial.

Appellant was arrested at the scene of the crime on December 31, 1970. Informations were filed in the circuit court on January 11, 1971. He was arraigned on January 11, 1971, entered pleas of not guilty, and the charges were set for trial February 15, 1971. On January 14, 1971, he escaped from custody in Jackson County. He remained at large until June 7, 1971, when he was arrested in Florida on a federal bank robbery charge. A hold order was sent to federal authorities from Jackson County while appellant was in custody in Florida. He was eventually convicted of that offense and incarcerated at a federal penal institution.

On March 16, 1972, while he was in the Medical Center for Federal Prisoners at Springfield, Missouri, appellant was notified of a detainer filed by the Jackson County sheriff on charges of assault with intent to kill and tampering with a motor vehicle.

In November, 1972, while he was at the Federal Reformatory in El Reno, Oklahoma, appellant mailed to the "Office of the Clerk, Criminal Court Building, Kansas City, Missouri" a "Petition Seeking the Withdrawal of the Detainers and the Dismissal of the Charges" against him in the Jackson County Circuit Court. The grounds of the "petition" are not entirely clear. Apparently, however, relief was sought for the reason that no action had been undertaken to bring him to trial within 180 days from the notice of the detainer filed while he was awaiting trial on the bank robbery charge. The clerk's records showed the filing of the petition, but no copy appeared in the file upon presentation of a later motion. There is likewise no record of the disposition of this petition.

In April, 1973, a formal request, in accordance with the Uniform Agreement on Detainers (§ 222.160, RSMo 1973 Supp.), was made for the disposition of the Missouri charges. They were set for trial on

June 18, 1973. On June 12, 1973, defendant filed a motion to dismiss the charges for failure to grant a speedy trial. The motion was presented to the court and overruled.

Although it is not entirely clear that the June 12, 1973 motion was premised on such basis, appellant here contends that his November, 1972 "Petition" was sufficient to place in motion the operation of the Agreement on Detainers and that failure on the part of the state to bring him to trial within 180 days of the filing of that document precluded his being tried. The respondent has joined issue on this ground.

The United States (18 U.S.C.Supp.) and Missouri (§ 222.160, supra) are parties to the Agreement on Detainers (AOD). Article III of the Agreement provides, in part:

"1. Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligi-

bility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

"2. The written notice and request for final disposition referred to in paragraph 1 of this article shall be given or sent by the prisoner to the warden, director of corrections or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested."

The November so-called "Petition" does not follow the requirements of AOD. It did not originate in a request by appellant to the warden of the federal institution. It did not contain the requisite certificate of that official. It was not mailed to the appropriate prosecuting official, the Jackson County prosecutor, the officer who would be required to put the machinery of AOD in motion.

■ By its terms, the petition sought dismissal of the Missouri charges on the grounds of violation of the federal constitutional guaranty of the right of speedy trial. It did refer to a 180–day limit for state action, but sought to apply that limit from the time of the filing of the "hold" order at the time of appellant's Florida arrest. Appellant's June, 1973 motion, in effect, concedes that his original "Petition" was not under AOD, because it makes no reference to the "Petition" and states that on April 9, 1973, " * * * the Defendant made formal request of Missouri for a speedy trial under the INTERSTATE AGREEMENT ON DETAINERS, * * *."

Appellant relies upon the application of AOD by the Delaware Supreme Court in Pittman v. State, 301 A.2d 509 (1973). In that case Pittman, imprisoned in Maryland, asked the warden of the prison to notify Delaware officials that he wanted final disposition of a Delaware detainer. Maryland and Delaware were parties to AOD. The Maryland official, in May, 1970, erro-

neously told Pittman that Delaware was not a party to AOD. Pittman wrote a letter, which was delivered to the attorney general of Delaware on July 13, 1970, demanding immediate trial of the Delaware charge. No action in Delaware resulted. In August, 1970, he directed correspondence to judicial officers in Delaware, which was forwarded to the attorney general. In November, 1970, the deputy administrator for AOD in Delaware transmitted to the Maryland attorney general a request for temporary custody of Pittman to clear the Delaware charge. Pittman refused to waive extradition, but was returned to Delaware on May 20, 1971, and tried and convicted on July 26, 1971.

The Supreme Court of Delaware, in holding that the indictment should have been dismissed under the 180–day rule, emphasized that Pittman did what was required of him when he made his request to the Maryland prison official. What occurred thereafter was the fault of that official and neglect on the part of Delaware officials. The court concluded that Pittman should not bear the burden of such errors and that the 180–day period having run, the indictment was required to be dismissed.

In this case, appellant followed a course other than that provided by AOD. He did not do so as a result of mistake or misguidance by any official or either the federal penal system or the State of Missouri. As appellant points out, AOD does call for liberal construction "so as to effectuate its purposes." Article IX. However, that does not mean that the provisions of the agreement may be wholly ignored by a person seeking its benefits.

In this case, the November, 1972 "Petition" was not sufficient to start the running of the 180–day period set by AOD. See State v. York, 511 S.W.2d 758, 761–762[2] (Mo.1974). Appellant acknowledges that when he did take proper steps to invoke the protection of AOD, he was brought to trial well within the 180–day period. Appellant's contention that the information should have been dismissed for failure to afford him a speedy trial is without merit.

Judgment affirmed.

All concur.