STATE of Iowa, Appellee,

v.

Clyde Jack BASS, Appellant.

No. 66701.

Supreme Court of Iowa.

June 16, 1982.

John J. Piazza, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Michael Jordan, Asst. Atty. Gen., and William L. Thomas, Asst. County Atty., for appellee.

Considered by REYNOLDSON, C. J., and HARRIS, ALLBEE, McGIVERIN and SCHULTZ, JJ.

McGIVERIN, Justice.

We granted discretionary review of trial court's denial of defendant Clyde Jack Bass'

pre-trial motion to dismiss a charge of first-degree murder pending against him. Two issues are raised: 1) whether the State failed to comply with chapter 821, The Code, "Agreement on Detainers Compact"; and 2) whether defendant was denied his right to a speedy trial as guaranteed by U.S.Const. Amends. VI and XIV. We resolve each issue in the negative and therefore affirm the court's denial of defendant's motion to dismiss.

The present case began on June 11, 1978, with the slaying of William Norman Grimm in Des Moines. Grimm had been shot with a .38 caliber firearm twice in the head and twice in the upper body. His body was then set on fire in a Des Moines hotel room.

A complaint charging Bass with the first-degree murder of Grimm in violation of section 707.2(1), The Code, was filed on June 17, 1978. A warrant issued for defendant's arrest. Bass was subsequently located in California. He had been taken into custody under California arrest warrants by the Los Angeles County sheriff on April 21, 1979. On April 28 the State of Iowa lodged a detainer upon defendant.[1]

On May 8, 1979, the Polk County attorney requested that the Governor of Iowa begin extradition proceedings to return defendant to the State of Iowa. On May 14, the Iowa Governor sent a requisition for extradition of defendant to the California Governor. On June 4, the California Governor's warrant of rendition for the return of defendant to the State of Iowa was sent to the Los Angeles chief of police. It was accompanied by a letter from the California Governor's deputy legal affairs secretary which directed the police chief: "Governor's warrant should not be served until [California] charges are resolved."

The California charges were resolved against defendant on June 6, 1979. He was sentenced to the California State Prison. On June 8 defendant's California attorney, Bradley M. Brunon, sent a letter to the Polk

---

1. The California authorities apparently misplaced the detainer at a later time. The State of Iowa, however, admitted it filed the detainer in its October 7, 1979, resistance to defendant's petition for writ of habeas corpus and motion to dismiss.

County attorney requesting the following[2]: "[Defendant] therefore demands that the criminal charge from your jurisdiction be promptly acted upon within the appropriate statutory, constitutional or other guarantee or implementation of his right to a speedy trial."

On September 29, 1980, Bass filed a pro se "petition for writ of habeas corpus and/or motion to dismiss" in Polk District Court. § 663.1, The Code. The petition and motion essentially alleged: 1) defendant had been denied a fair and speedy trial by the State of Iowa and the murder charge must be dismissed for want of timely prosecution; and 2) the State failed to comply with chapter 821, The Code, and dismissal of the charge was proper thereunder. Defendant's chapter 821 claim was that the 180-day time limit on commencement of trials contained in Article III(a) of section 821.1 had been violated by the State. He claimed the 180-day limit was triggered by an April 29, 1979, oral request to two federal agents who notified him that a detainer had been lodged, and by the June 8, 1979, letter from his attorney.

The State resisted the petition and motion, contending that the June 8, 1979, letter from defendant's counsel was insufficient to invoke the 180-day time limit of Article III(a).

On October 17, 1980, the court (Judge Novak) overruled defendant's motion to dismiss.[3] It found: 1) the State had made a good faith effort to extradite defendant to the State of Iowa; 2) the June 8, 1979, letter did not comply with the requirements of section 821.1, Article III, to invoke the Interstate Agreement on Detainers Act (IADA); but 3) the September 29, 1980, motion to dismiss did invoke the IADA.

On December 16, 1980, an assistant Polk County attorney made a request for temporary custody of Bass from the warden of the California State Prison at Folsom pursuant to Article IV(a) of IADA. The assistant county attorney received a letter from the correctional case records manager at Folsom Prison. The letter requested: "Would you please send us a copy of your warrant or Detainer as required under the Interstate Agreement on Detainers so we may process your request for temporary custody.... Upon receipt of your Detainer, we will notify you when [defendant] will be available to your deputies for pick up."

A certified copy of the June 17, 1978, complaint and arrest warrant was sent to the prison records manager on December 31, 1980. The prison responded that defendant could be picked up anytime after January 18, 1981.

Bass was returned to Iowa on February 25, 1981. He was charged, by trial information on April 7, 1981, with the first-degree murder of William Grimm in violation of sections 707.1 and .2, The Code. Defendant filed a motion to dismiss the information on April 10. The motion incorporated by reference the claims raised in the September 29, 1980, petition for writ of habeas corpus/motion to dismiss. It also alleged that the 180-day commencement of trial deadline of Article III(a) of section 821.1 had expired without trial of defendant. Trial court (Judge Missildine) overruled the motion to dismiss on May 4, 1981.

Defendant applied for and we granted discretionary review. Ch. 814, The Code; Iowa R.App.P. 201–203.

I. *Compliance with chapter 821.* Defendant's first assignment of error is that trial court erred in denying his motion to dismiss because the State failed to comply with Chapter 821. Bass contends the State failed to bring him to trial within 180 days of his September 29, 1980, pro se motion to dismiss, which Judge Novak, in his October 17, 1980, ruling, stated was sufficient to

---

**2.** The letter was actually written and sent to the United States attorney for the Southern District of Iowa. The United States attorney forwarded the letter to the Polk County attorney.

**3.** No ruling was made concerning a writ of habeas corpus.

trigger the provisions of the IADA.[4] If the October 17 ruling were correct, Bass' contention would be meritorious, because he was not brought to trial within 180 days of September 29, 1980. However, we believe the October 17 statement was not correct. The 180-day time limit of Article III(a) of the IADA has never been invoked in this case. Defendant's first assignment is without merit.

The crux of Bass' argument hinges upon interpretation of Article III of Section 821.-1, the IADA. It provides, in pertinent part:

a. Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: Provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

b. The written notice and request for final disposition referred to in paragraph "a" hereof shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

Article V(c) provides for the dismissal of charges not tried within the 180-day limit of Article III(a):

If the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III or Article IV hereof, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

We have recognized that the IADA is remedial and should be liberally construed in favor of the prisoner. *State v. Wood*, 241 N.W.2d 8, 12 (Iowa 1976); *see* section 821.1, Article IX ("This agreement shall be liberally construed so as to effectuate its purposes.") However, on the record in this case, a finding that a motion to dismiss triggers the 180-day time limit of Article III(a) goes beyond liberal construction. Liberal construction cannot be used to render null and void the notice and certificate requirements of Article III. *See People v. Daily*, 46 Ill.App.3d 195, 202–03, 4 Ill.Dec. 756, 762, 360 N.E.2d 1131, 1137 (1977); *Isaacs v. State*, 31 Md.App. 604, 611, 358 A.2d 273, 277–78 (1976); *State v. Savage*, 522 S.W.2d 144, 148 (Mo.Ct.App.1975).

Article III(a) establishes two requirements for invocation of IADA by a prison-

4. Defendant does not raise or argue in his brief any contentions that the April 29, 1979, oral request or the June 8, 1979, letter from his attorney were sufficient to invoke the 180-day limit under Article III(a) of section 821.1, The Code. Although our analysis in this opinion would require answering these contentions in the negative, it is not necessary for us to resolve these questions as they have been waived. Iowa R.App.P. 14(a)(3).

er. First, the prisoner shall cause "to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint." We assume, without deciding, that this first "notice" requirement was met in the present case. The court and the county attorney knew defendant was at the California State Prison at Folsom on September 29, 1980, and that he desired a final resolution of the murder charge pending against him.

The second Article III(a) requirement for a prisoner to invoke the IADA is that the notice or request of the prisoner

shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

There is no evidence, and Bass does not contend, that he complied with Article III(b) in giving or sending a written notice and request for final disposition of the Iowa charge to the warden of his California prison. Accordingly, that warden had no reason to and did not prepare and process a certificate as to defendant's California prison status to the Iowa authorities as required by sections (a) and (b) of Article III.

"The certificate serves to fully inform the requesting state officials of the prisoner's status, thus allowing the State's Attorney to make a rational decision regarding the disposition of the case." *Daily*, 46 Ill. App.3d at 203, 4 Ill.Dec. at 763, 360 N.E.2d at 1138; *see also Isaacs*, 31 Md.App. at 611, 358 A.2d at 278.

The September 29, 1980, motion to dismiss was not accompanied by the required certificate. The State has yet to be apprised of this information required by Article III. Before the 180-day limit can be invoked, the State must receive "written notice of the requested disposition *and* the requisite certificate of the officials of the incarcerating state." *State v. Thomas*, 275 N.W.2d 211, 214 (Iowa 1979) (emphasis in original.) Since the State has not yet received the certificate in this case, the 180-day limit for commencement of trial has not been invoked.

Our decision is supported by decisions in several other jurisdictions. In *People v. Merryfield*, 83 Ill.App.3d 1017, 1020, 39 Ill. Dec. 316, 318, 404 N.E.2d 907, 909 (1980), the court found the defendant was not entitled to the benefits of the detainer act because no detainer had ever been lodged with the authorities having custody of defendant. As an alternative ground for denying a 180-day dismissal pursuant to Article III, the court found that the defendant had not triggered Article III with two motions for speedy trial. "By his demands for speedy trial, the defendant did cause to be delivered to the prosecuting officer and the appropriate court (1) written notice of his place of imprisonment and (2) his request for a final disposition to be made of the charge pending against him." *Id.* at 1020–21, 39 Ill.Dec. at 318, 404 N.E.2d at 909. However, the court found that the fact that "defendant's request for final disposition was not accompanied by the required certificate" prevented initiation of Article III procedure. *Id.* at 1021, 39 Ill.Dec. at 319, 404 N.E.2d at 910.

In *State v. Soloway*, 603 S.W.2d 688, 690–91 (Mo.Ct.App.1980), the court held that defendant's pro se motion to dismiss and/or demand for trial did not activate the 180-day limitation of Article III. The court stated why defendant's motion did not trigger Article III:

* * * Third, it is required that a certificate of the warden or other official having custody of the appellant be forwarded to both the court and the prosecuting attorney. The appellant's counsel in open court admitted the appellant "failed to comply . . . in that he had not had these things certified by the warden." The only reference to a certificate was the prosecutor's statement "the certificate"

was received during May, 1979. In any event, it is not shown that the required certificate was received by both the court and the prosecuting attorney on November 27, 1978.

*Id.* at 690.

Similarly, in *State v. Savage*, 522 S.W.2d 144, 146–48 (Mo.Ct.App.1975), defendant's "Petition Seeking the Withdrawal of the Detainers and the Dismissal of the Charges" filed with the clerk of the Missouri district criminal court was held insufficient to trigger the 180-day limitation of Article III. The court found that the petition was based on the federal constitutional guarantee of the right to speedy trial and not on the IADA. *Id.* at 147.

In *State v. Vaughn*, 296 N.C. 167, 176–77, 250 S.E.2d 210, 216 (1978), *cert. denied*, 441 U.S. 935, 99 S.Ct. 2060, 60 L.Ed.2d 665 (1979), defendant's motion for speedy trial was held insufficient to invoke the 180-day limitation of Article III. The defect in the motion was that it was not accompanied by written notice of the defendant's place of imprisonment or the required certificate. *Id.* at 176–77, 250 S.E.2d at 216.

Some cases invoke Article III procedure without compliance with the notice and certificate requirement, but these cases are distinguishable from the present one in that they involve good faith efforts at compliance by the defendant coupled with uncooperative behavior on the part of state or federal officials. *See Schofs v. Warden, FCI, Lexington*, 509 F.Supp. 78, 81–83 (E.D. Ky.1981) (detainer quashed, but charges not dismissed, where defendant, who wrote a letter requesting final disposition, "requested and was denied, through no fault of his own, the forms necessary to initiate a request for final disposition pursuant to the IAD."); *Pittman v. State*, 301 A.2d 509, 511–14 (Del.1973) (defendant, after "requesting that detainer forms be filled out so that he could return to Delaware for a speedy trial" was erroneously informed by Maryland prison official that Delaware was not a party to the IADA; Delaware officials also ignored his requests; defendant's subsequent requests for final disposition, although procedurally defective, sufficient to invoke 180-day limitation of Article III); *State v. Seadin*, 181 Mont. 294, 295–98, 593 P.2d 451, 452–53 (1979) (defendant's motion for speedy trial found to invoke Article III limitation where defendant "did all that he could do to comply with the provisions of the Agreement" and "prison officials would not aid defendant in processing the detainer".) There was no uncooperative official behavior in the present case.

Bass' September 29, 1980, motion to dismiss did not invoke the 180-day limit of Article III. There was no error in overruling Bass' April 10, 1981, motion to dismiss on IADA grounds.

II. *Right to speedy trial.* Defendant also argues that trial court erred in overruling his motion to dismiss because he was denied his right to a speedy trial guaranteed by U.S.Const. Amends. VI and XIV.[5] We find no error.

In weighing constitutional claims for a speedy trial we use a balancing test in which the conduct of both the prosecution and the defendant are considered. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2191–92, 33 L.Ed.2d 101, 116 (1972). Four factors are used in this balancing: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117; *State v. Zaehringer*, 306 N.W.2d 792, 794 (Iowa 1981). "We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a depriva-

5. "The Court's opinion in *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), established that the right to a speedy trial is 'fundamental' and is imposed by the Due Process Clause of the Fourteenth Amendment on the States." *Barker v. Wingo*, 407 U.S. 514, 515, 92 S.Ct. 2182, 2184, 33 L.Ed.2d 101, 108 (1972).

Defendant failed to raise a presently urged equal protection claim in the motion to dismiss or at any other time prior to this discretionary review. Therefore, error has not been preserved on this issue and there is nothing for us to decide. *State v. Moorehead*, 308 N.W.2d 60, 64–65 (Iowa 1981).

tion of the right of speedy trial." *Barker*, 407 U.S. at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118.

■ A. *Length of delay.* William Grimm was killed on June 11, 1978. A complaint and arrest warrant issued against defendant on June 17, 1978. After defendant's return to Iowa on February 25, 1981, an information was filed on April 7. Trial was set for June 24, 1981. If defendant had not applied for discretionary review, the trial would have occurred approximately three years after the offense.[6]

B. *Reasons for the delay.*[7] The delay from June 17, 1978, until April 21, 1979 (defendant's apprehension on California charges), appears from the record to be due either to defendant's flight from authorities or the simple inability of the State of Iowa to locate the defendant. Seven days after defendant was taken into custody by the Los Angeles County sheriff, Iowa lodged a detainer against defendant. On May 8, 1979, the State began its effort to extradite defendant to Iowa. A California governor's warrant of rendition was obtained on June 4, 1979, but it was not to be served until the California charges were resolved against defendant. At this point the State was engaged in a good faith effort to secure defendant's presence in Iowa and bring him to trial in a speedy manner.

On June 8, 1979, Bass attempted to avail himself of the provisions of the IADA by having his counsel send a letter to the State. As discussed in division I, the letter did not invoke the provision of the IADA. The letter did, however, give the State cause to adopt a wait-and-see position towards the defendant. The State was entitled to wait for the defendant to complete his process of attempting to resolve the charges against him pursuant to Article III of the IADA.[8]

It became clear to the State on September 29, 1980, that defendant had no intention of completing the necessary procedural process under Article III. After the October 17, 1980, ruling the State, on December 16, 1980, initiated the process to attempt to secure defendant's presence for trial under Article IV of the IADA. Defendant's presence in Iowa was obtained on February 25, 1981. He was charged by trial information on April 7, and filed his motion to dismiss on April 10.

In sum, the State is responsible for, at most, three months of delay in the trial of

---

**6.** In *Barker*, the court noted that delay may work to the accused's advantage: "Delay is not an uncommon defense tactic. As the time between the commission of the crime and trial lengthens, witnesses may become unavailable or their memories may fade. If the witnesses support the prosecution, its case will be weakened, sometimes seriously so. And it is the prosecution which carries the burden of proof. Thus, unlike the right to counsel or the right to be free from compelled self-incrimination, deprivation of the right to speedy trial does not per se prejudice the accused's ability to defend himself." 407 U.S. at 521, 92 S.Ct. at 2187, 33 L.Ed.2d at 111–12.

A delay in excess of five years was held not to be a denial of the right to a speedy trial. *Id.* at 536, 92 S.Ct. at 2195, 33 L.Ed.2d at 120.

**7.** "Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay. *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117 (footnote omitted).

**8.** The State substantially complied with ABA Standards, Speedy Trial § 3.1 (1974), which provides, in relevant part: "To protect the right to speedy trial of a person serving a term of imprisonment either within or without the jurisdiction, it should be provided by rule or statute and, where necessary, interstate compact, that:

(a) If the prosecuting attorney knows that a person charged with a criminal offense is serving a term of imprisonment in a penal institution of that or another jurisdiction, he must promptly:

(i) undertake to obtain the presence of the prisoner for trial; or

(ii) cause a detainer to be filed with the official having custody of the prisoner and request him to so advise the prisoner and to advise the prisoner of his right to demand trial."

defendant. Bass has caused the remainder of the delay by his own actions.

C. *Defendant's assertion of his right.* Bass asserted his constitutional right to a speedy trial in his attorney's June 8, 1979, letter, and in the September 29, 1980, petition for writ of habeas corpus/motion to dismiss.[9]

D. *Prejudice to the defendant.* Prejudice "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect...: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118; *Smith v. Hooey,* 393 U.S. 374, 378, 89 S.Ct. 575, 577, 21 L.Ed.2d 607, 611 (1969).

Defendant urges two items of prejudice here: 1) "the obvious prejudice in not being able to return to the jurisdiction to prepare a defense to the Iowa state charges for over 20 months"; and 2) the loss of the possibility of serving time for any Iowa conviction, especially for a lesser-included offense, concurrently with the time he was serving in California. We cannot agree with defendant's first contention of prejudice. There is nothing in the record to show that he was prevented from preparing a defense in any way. We are compelled however, to agree with his second allegation of prejudice. In *Smith v. Hooey,* 393 U.S. at 378, 89 S.Ct. at 577, 21 L.Ed.2d at 611, the court said:

> At first blush it might appear that a man already in prison under a lawful sentence is hardly in a position to suffer from "undue and oppressive incarceration prior to trial." But the fact is that delay in bringing such a person to trial on a pending charge may ultimately result in as much oppression as is suffered by one who is jailed without bail upon an untried charge. First, the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever

lost if trial of the pending charge is postponed. *Cf. Cooper v. Lockhart,* 489 F.2d 308, 314 n.10 (8th Cir. 1973) (discussion of punitive consequences of detainers). Defendant was prejudiced to the extent he lost the possibility of concurrent sentencing.

Under the four-factor *Barker* analysis, however, giving consideration to the fact that defendant is responsible for most of the delay in this case, we find no denial of defendant's constitutional right to a speedy trial.

In summary, after consideration of all of defendant's contentions, whether or not discussed in this opinion, we conclude that trial court committed no error when it overruled defendant's motion to dismiss. The ruling is therefore affirmed.

AFFIRMED.

---

**9.** Failure of a defendant to assert his right to speedy trial "will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 117–18.