STATE OF NEBRASKA, APPELLEE, V. STEVEN W. NEARHOOD, APPELLANT.

518 N.W.2d 165

Filed June 21, 1994.    No. A-93-827.

916

Stanley D. Cohen for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

HANNON and MILLER-LERMAN, Judges, and HOWARD, District Judge, Retired.

MILLER-LERMAN, Judge.

Steven W. Nearhood appeals directly from the denial of his motion to dismiss the charges pending against him in Nebraska after he alleged he had not been tried within 180 days of his request for disposition pursuant to the interstate Agreement on Detainers (Agreement), Neb. Rev. Stat. § 29-759 (Reissue

 

1989). For the reasons recited below, we affirm.

## FACTS

Nearhood was charged in Nebraska on May 22, 1992, with two counts of theft by receiving stolen property and two counts of being a habitual criminal for acts occurring in Lancaster County. While the Nebraska case was pending, Nearhood was convicted and sentenced in Nevada to 4 years' incarceration. Nebraska placed a detainer on Nearhood on August 13, 1992, and it was activated in Nevada on August 26. According to the motion to dismiss, Nearhood thereafter repeatedly contacted numerous Nevada prison officials, including his caseworker, the warrant coordinator, and the warden, in an effort to secure the paperwork required to be attached to his request to be brought to trial in Nebraska within 180 days of such request. According to the motion to dismiss, Nearhood wrote the Lancaster County Attorney on December 16, 1992, requesting extradition and a speedy trial and projected a Nevada release date of February 8, 1995. A copy of the letter to the county attorney was sent by Nearhood to the Lancaster County District Court on January 25, 1993.

On August 6, 1993, Nearhood filed a motion to dismiss the information in Lancaster County District Court for failure to prosecute, in violation of article III, §§ (a) and (d), of the Agreement. Article III, § (a), provides:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; *Provided*, that for good cause shown in open court, the prisoner or his counsel being present, the court

having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

Article III, § (d), provides:

Any request for final disposition made by a prisoner pursuant to paragraph (a) hereof shall operate as a request for final disposition of all untried indictments, informations or complaints on the basis of which detainers have been lodged against the prisoner from the state to whose prosecuting official the request for final disposition is specifically directed. The warden, commissioner of corrections or other official having custody of the prisoner shall forthwith notify all appropriate prosecuting officers and courts in the several jurisdictions within the state to which the prisoner's request for final disposition is being sent of the proceeding being initiated by the prisoner. Any notification sent pursuant to this paragraph shall be accompanied by copies of the prisoner's written notice, request, and the certificate. If trial is not had . . . the court shall enter an order dismissing the same with prejudice.

Nearhood's motion is composed of 33 numbered paragraphs, followed by a 10-page memorandum of points and authorities. Attached to the motion by reference, but without incorporation, are exhibits labeled "B" to "FF." The numbered paragraphs are largely composed of recitals by Nearhood of his unsuccessful efforts to obtain the paperwork required to be filed in order to trigger the 180-day period during which he should be tried under the Agreement. His letter to the Lancaster County Attorney, of which letter he also sent a copy to the Lancaster County District Court, was not accompanied by the certificate stating the term of commitment, time served, good time, parole eligibility, and decisions of parole of the parole

agency as required by article III, §§ (a) and (d). On page 8 of his motion, Nearhood states that he "was not able to get the State of Nevada's Prison Officials to comply with the [Agreement] and prepare the paperwork." On page 11, he continues that he "is powerless to **force** the prison officials to comply with **their** duty under the Agreement." In his motion, Nearhood nevertheless claims that he "substantially complied" with the Agreement, and that the 180 days during which to try him has expired, and that the information should be dismissed. The district court for Lancaster County denied the motion to dismiss on August 6, 1993, and Nearhood appeals.

## ANALYSIS

On appeal, Nearhood argues that his motion to dismiss is cognizable under Nebraska practice and that the trial court erred in denying his motion to dismiss. He contends generally that the admittedly incomplete paperwork should not be fatal to his request for disposition under the Agreement.

The State responds that Nearhood's motion to dismiss is not a recognized pleading in Nebraska practice and that the denial thereof, if permitted, is not a final, appealable order. The State argues that, in any event, Nearhood's failure to comply with the filing requirements of article III, §§ (a) and (d), of the Agreement precludes the relief sought and that the trial court properly denied his motion to dismiss.

*Appealability.*

■ The State relies primarily on *Blitzkie v. State*, 216 Neb. 105, 342 N.W.2d 5 (1983), in arguing that a motion to dismiss is not proper in the instant case. In *Blitzkie*, the Nebraska Supreme Court stated that a motion to dismiss is not allowable as a pretrial pleading in a civil case. The State acknowledges, however, that pursuant to Neb. Rev. Stat. § 29-1807 (Reissue 1989), a motion in the nature of a motion to dismiss is permitted in criminal cases in the form of a motion to quash, a plea in abatement, or a demurrer. The State further argues that if the instant motion is proper, its denial is not a final, appealable order under Neb. Rev. Stat. § 25-1902 (Reissue 1989).

■ The case law shows that the Nebraska Supreme Court has periodically considered appeals of denials of motions to dismiss

without criticism and has concluded that the denials in those cases were appealable orders. The court has also stated that an overruling of a motion to dismiss in the nature of a plea in bar is a final order from which an appeal may be taken. *State v. Woodfork*, 239 Neb. 720, 478 N.W.2d 248 (1991). Elsewhere, in a juvenile case, the Nebraska Supreme Court recently treated the denial of a motion to dismiss and a motion for a stay as appealable orders. *In re Interest of L.W.*, 241 Neb. 84, 486 N.W.2d 486 (1992).

Neb. Rev. Stat. § 25-1911 (Cum. Supp. 1992) provides for the appellate review of final orders. A final order is defined by § 25-1902 as "[a]n order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment, and an order affecting a substantial right made in a special proceeding . . . ." With respect to a special proceeding, the Nebraska Supreme Court has stated:

A special proceeding may be said to include every special statutory remedy which is not in itself an action. . . .

. . . "Where the law confers a right, and authorizes a special application to a court to enforce it, the proceeding is special, within the ordinary meaning of the term 'special proceeding.' "

*Sullivan v. Storz*, 156 Neb. 177, 180, 55 N.W.2d 499, 502 (1952). Accord *State v. Guatney*, 207 Neb. 501, 299 N.W.2d 538 (1980) (holding that an order stating that a criminal defendant was not competent to stand trial and confining him until such time as he was competent was a final, appealable order in a special proceeding).

The instant case is grounded on Nearhood's statutory rights based on the Agreement. See *State v. Harper, ante* p. 220, 508 N.W.2d 584 (1993). Nearhood's motion to dismiss affects his substantial right to an expeditious trial as contemplated by the Agreement's 180-day provision. A proceeding to enforce these rights under the Agreement is a special statutory remedy which is not itself an action and is, therefore, a "special proceeding" as contemplated by § 25-1902. See *State v. Hernandez,* 1 Neb. App. 830, 511 N.W.2d 535 (1993). Accordingly, we conclude that the order denying Nearhood's motion to dismiss is a final, appealable order.

*Denial of Motion to Dismiss.*

 In his motion to dismiss, Nearhood acknowledges that his request for final disposition within 180 days was not in proper form, but that because he made efforts to comply with the Agreement's provisions, his request for final disposition should, nevertheless, be honored. Article I states that the Agreement was designed "to encourage the expeditious and orderly disposition of . . . charges [outstanding against a prisoner] and determination of the proper status of any and all detainers based on untried indictments, informations or complaints."

> The [Interstate Agreement on Detainers Act] provides the procedure between the states and the United States whereby persons who are imprisoned in one state or by the United States and who are also charged with crimes in other states or by the United States can be tried expeditiously for the pending charges while they are serving their current sentence. . . . The compact provides detailed provisions for the filing of the request and for the giving of notice required to commence the 180-day period.

*Harper, ante* at 224, 508 N.W.2d at 586. The face of Nearhood's motion to dismiss shows that he failed to comply with those provisions.

 The Nebraska Supreme Court has held that "[u]nder Article III of the Agreement, for a prisoner's demand for disposition of charges to trigger the 180-day period, it must be made in the manner therein required." *State v. Reynolds*, 218 Neb. 753, 758, 359 N.W.2d 93, 97 (1984). The court states that article III, § (a), established "two requirements which must be met before the 180-day limit can be invoked: (1) written notice of the requested disposition and (2) the requisite certificate of the officials of the incarcerating state." *Reynolds*, 218 Neb. at 758, 359 N.W.2d at 97. By its terms, article III, § (a), requires that notice requesting final disposition be made to the prosecuting attorney and the appropriate court. The request

> shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the

sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

The certificate containing the information just recited and required by article III, § (a), did not accompany Nearhood's request to the prosecutor or the court. Because Nearhood's request was not made in the manner required, it was not effective and did not trigger the 180-day period. See *Reynolds, supra*.

■ Nearhood argues that it is unfair to deprive him of the benefit of the 180-day final disposition opportunity contained in the Agreement by virtue of the failure of Nevada officials to act properly on his behalf. The Nebraska Supreme Court considered in *Reynolds* the impact on a prisoner's status of the custodial state's failure to comply with the Agreement. The court concluded that the dismissal of charges against the prisoner is not a remedy available under the Agreement where the officials in the custodial state have disregarded the law.

In *Fex v. Michigan*, ___ U.S. ___, 113 S. Ct. 1085, 122 L. Ed. 2d 406 (1993), the U.S. Supreme Court held that the 180-day time period in article III, §(a), does not commence until the prisoner's request has actually been received by the court and prosecuting officer. In *Fex*, the Court considered the unfair situation in which the request for a 180-day final disposition is given by the prisoner to the warden of the custodial state, and the warden delays or fails to forward the request to the receiving state. The Court concluded that the problem of a warden who delays or fails to send the request is "more appropriately addressed to the legislatures of the contracting States, which adopted the [Interstate Agreement on Detainers Act's] text." 113 S. Ct. at 1091. In remarking on the transmittal of a request delayed by officials of the custodial state and the additional time a prisoner may thereby be caused to serve, the Court stated that the "result is bad, given the intent of the [Interstate Agreement ôn Detainers Act]. It is, however, no worse than what regularly occurred before the [act] was adopted . . . ." 113 S. Ct. at 1090.

Based on the holding in *Reynolds* and the pronouncements of superior appellate courts, we conclude that the face of

Nearhood's motion to dismiss demonstrates that he did not file his request for final disposition in the manner required by the Agreement, that the 180-day period was not triggered, and that dismissal of the charges was not an available remedy. The trial court properly denied Nearhood's motion to dismiss.

AFFIRMED.