1998 ND 137

**STATE of North Dakota, Plaintiff and Appellee,**

**v.**

**David Allen MOE, Defendant and Appellant.**

**Criminal Nos. 970290, 970291.**

Supreme Court of North Dakota.

July 6, 1998.

Patricia L. Burke (argued), State's Attorney, Bismarck, for plaintiff and appellee.

Ralph A. Vinje (argued), of Vinje Law Firm, Bismarck, for defendant and appellant.

MARING, Justice.

[¶ 1] David Moe appeals from judgments of conviction entered upon conditional pleas of guilty, asserting his rights to a speedy disposition of detainers and to a speedy trial were violated. We affirm.

## I. FACTS

[¶ 2] In 1993, Moe was charged in Burleigh County, North Dakota, with theft of property, possession of controlled substances, and

possession of drug paraphernalia. Moe failed to appear at the hearing on those charges, and was subsequently charged with failure to appear. Moe was later incarcerated in Colorado on other charges, and in March 1996 North Dakota filed a detainer with the Colorado authorities requesting that Moe be held for transportation to North Dakota to stand trial on the outstanding charges upon completion of his Colorado sentence.

[¶ 3] In May 1996 Moe's North Dakota attorney served a demand for speedy disposition of detainers upon the warden of the Colorado prison where Moe was incarcerated and upon the Burleigh County state's attorney. The demand expressly stated it was made under the Uniform Mandatory Disposition of Detainers Act [UMDDA] and referenced N.D.C.C. § 29–33–01. The demand did not include the certificate from the warden required under N.D.C.C. § 29–33–02(1) or Article III, § 1 of the Interstate Agreement on Detainers [IAD], N.D.C.C. § 29–34–01. The State filed a response, asserting the appropriate Act was the IAD, the demand did not meet the requirements of the IAD, and the demand should be declared invalid. On June 4, 1996, the district court determined Moe's demand did not comply with the mandates of the IAD and denied his request for speedy disposition of detainers.

[¶ 4] On July 24, 1996, Moe attempted a second time to serve a demand for speedy disposition of detainers. He served the demand on the administrator of the county jail in Colorado where he was being held at that time. This demand was not forwarded to or served upon the Burleigh County state's attorney, and North Dakota officials were unaware of this second demand.

[¶ 5] Moe finished his Colorado sentence and was transported to the Burleigh County jail on February 1, 1997. On February 12, he moved for dismissal, asserting the State was required under the IAD to bring him to trial within 180 days of his first demand in May 1996. While that motion was pending, the State moved for a continuance from the scheduled March 20, 1997 trial date. Moe did not object to the motion for continuance,

and the court granted it. The court subsequently denied Moe's motion to dismiss.

[¶ 6] Moe later filed another motion to dismiss and a petition for a writ of habeas corpus. Both were denied, and trial was scheduled to begin on September 23, 1997. On September 12, Moe entered a conditional plea of guilty under N.D.R.Crim.P. 11(a)(2), reserving the right to appeal on the disposition of detainers and speedy trial issues. Judgments of conviction were entered, and Moe appealed.

## II. INTERSTATE AGREEMENT ON DETAINERS

[¶ 7] Moe asserts he validly invoked the provisions of the IAD and is entitled to dismissal of all charges because the State failed to try him within 180 days of his demand for speedy disposition of detainers.

### A. FIRST DEMAND

[¶ 8] The IAD provides a method for the orderly disposition of detainers filed by one jurisdiction on prisoners incarcerated in another jurisdiction. The United States, the District of Columbia, and 48 states (including North Dakota and Colorado) are parties to the IAD. *See Fex v. Michigan*, 507 U.S. 43, 44, 113 S.Ct. 1085, 1087, 122 L.Ed.2d 406, 411 (1993); *Runck v. State*, 497 N.W.2d 74, 77–78 (N.D.1993).

[¶ 9] The relevant provisions of the IAD, as codified in N.D.C.C. § 29–34–01, are Sections 1 and 2 of Article III:

1. Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the

indictment, information or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

2. The written notice and request for final disposition referred to in paragraph 1 hereof shall be given or sent by the prisoner to the official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

[¶ 10] Moe asserts the district court denied his request for speedy disposition of detainers solely because he referenced the wrong statute in his request. Moe's May 23, 1996 demand expressly referenced the UMDDA, and stated the demand was made "pursuant to North Dakota Century Code 29–33–01." The UMDDA, codified in N.D.C.C. ch. 29–33, governs disposition of detainers against prisoners incarcerated in-state; the IAD, codified in N.D.C.C. ch. 29–34, governs disposition of detainers against prisoners incarcerated out-of-state. The IAD was the governing law when Moe was incarcerated in Colorado.

[¶ 11] Moe asserts his May 23, 1996 demand in all other respects satisfied the IAD. He ignores that his demand was not accompanied by the certificate expressly required under Art. III, § 1 of the IAD. He also ignores the caselaw interpreting the IAD, holding that the certificate is mandatory and is required to trigger the 180–day provision of the IAD. *See, e.g., Casper v. Ryan,* 822 F.2d 1283, 1292–93 (3d Cir.1987), *cert. denied,* 484 U.S. 1012, 108 S.Ct. 714, 98

L.Ed.2d 664 (1988); *Gearheart v. Wallace,* 964 F.Supp. 205, 209 (E.D.Va.1997); *State v. Toste,* 198 Conn. 573, 504 A.2d 1036, 1045 (1986); *State v. Bass,* 320 N.W.2d 824, 828 (Iowa 1982); *Isaacs v. State,* 31 Md.App. 604, 358 A.2d 273, 277–78 (1976); *State v. Nearhood,* 2 Neb.App. 915, 518 N.W.2d 165, 170 (1994); *Eckard v. Commonwealth,* 20 Va. App. 619, 460 S.E.2d 242, 246 (1995). Because the May 26, 1996 demand was not accompanied by the required certificate, it was invalid and the 180–day period never began to run. Strict compliance with the notice provisions of the IAD is required, and a state is not required to bring a prisoner to trial within 180 days of an incomplete or improper IAD request. *See, e.g., United States v. Henson,* 945 F.2d 430, 434 (1st Cir.1991); *Toste,* 504 A.2d at 1045; *Clater v. State,* 266 Ga. 511, 467 S.E.2d 537, 539–40 (1996); *Eckard,* 460 S.E.2d at 246.

[¶ 12] Moe asserts the State had notice that he was incarcerated in Colorado and wanted a speedy disposition of detainers, and this "actual notice" satisfies the intent and purpose of the IAD. However, actual notice of the prisoner's request alone does not put the State on notice of the information that would be included in the certificate of the official having custody of the prisoner. *State v. Smith,* 115 N.M. 749, 858 P.2d 416, 420 (Ct.App.1993). There are strong policy reasons for requiring the information in the certificate be provided to the prosecuting state before the IAD is triggered. As the court explained in *Isaacs,* 358 A.2d at 277–78:

> We think the provision ... that "[t]he request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner ..." containing the information specified in the statute, is mandatory and not directory. We believe the Legislature so provided because the appropriate State's Attorney would then be in a position to evaluate whether the nature of the charges pending against the accused was of such a severe degree as to merit further trial in this State in the light of the sentence then being served in the other state that was a party to the interstate agreement. If the State's Attorney was of the opinion that

the best interests of the people of Maryland lay in pursuing the matter, he could request the production of the accused for trial. On the other hand, if the sentence the prisoner was serving in the other state were such that bringing the accused to trial in Maryland would serve no useful purpose, he could allow the one hundred and eighty (180) day period to lapse, thus, terminating the matter.

The certificate allows the prosecutor to make a rational decision whether to prosecute, and the State may, for example, decline to prosecute upon learning the prisoner is already serving a lengthy sentence elsewhere on a more serious charge. *See Norton v. Parke*, 892 F.2d 476, 481 (6th Cir.1989), *cert. denied*, 494 U.S. 1060, 110 S.Ct. 1533, 108 L.Ed.2d 772 (1990); *Casper*, 822 F.2d at 1293; *Bass*, 320 N.W.2d at 828; *Eckard*, 460 S.E.2d at 247.

[¶ 13] Moe also argues his attempt to comply with the IAD in this case should be sufficient, in accordance with the Act's direction that it be "liberally construed so as to effectuate its purposes." IAD Art. IX, N.D.C.C. § 29–34–01. Other courts have rejected similar arguments. In *Bass*, 320 N.W.2d at 827, the Supreme Court of Iowa noted that "[l]iberal construction cannot be used to render null and void the notice and certificate requirements of Article III." Furthermore, "[t]he phrase 'liberally construed' does not ... mean that courts are free to bend the legislation out of shape or to remold it to some other form." *Isaacs*, 358 A.2d at 277. Although the IAD must be liberally construed to effectuate its purposes, "allowing substantial circumvention of IAD procedures does not serve the IAD's purposes." *Eckard*, 460 S.E.2d at 247.

[¶ 14] We conclude Moe's May 23, 1996 demand for speedy disposition of detainers did not comply with the requirements of the IAD and did not trigger the 180–day period.

### B. SECOND DEMAND

[¶ 15] Moe also asserts he fully complied with the IAD when he served his second request for speedy disposition of detainers on the proper Colorado official on July 24, 1996. He asserts the Colorado official's failure to forward the request with the required certificate to North Dakota authorities should not affect his right to be tried within 180 days of that date.

[¶ 16] The United States Supreme Court answered this question in *Fex v. Michigan*, 507 U.S. 43, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993). The Court held the 180–day period under the IAD commences when the request is actually delivered to officials of the state where charges are pending, not when the prisoner delivers them to the warden, and if the warden does not forward the documents the 180–day period never begins to run. *Fex*, 507 U.S. at 47–48, 52, 113 S.Ct. at 1088–89, 1090–91, 122 L.Ed.2d at 412–13, 415; *see also Segroves v. State*, 629 So.2d 967, 968 (Fla.Dist.Ct.App.1993); *State v. Nearhood*, 2 Neb.App. 915, 518 N.W.2d 165, 170 (1994).

[¶ 17] It is undisputed Moe's second request was never forwarded to North Dakota officials by Colorado officials, and the Burleigh County state's attorney first learned of this request after Moe was returned to North Dakota. Under these circumstances, *Fex* controls and the 180–day period under the IAD never commenced.

### III. UNIFORM MANDATORY DISPOSITION OF DETAINERS ACT

[¶ 18] Moe asserts that if his May 23, 1996 demand did not properly invoke the IAD, it should be construed as invoking the UMDDA on February 1, 1997, when he was transferred from Colorado to the Burleigh County jail.

[¶ 19] Application of the UMDDA, as codified in N.D.C.C. ch. 29–33, "is limited to those instances where a detainer has been filed against a person imprisoned in a penal or correctional institution in the State of North Dakota." *State v. Carlson*, 258 N.W.2d 253, 257 (N.D.1977); *see also State v. Smith*, 849 S.W.2d 209, 213 (Mo.Ct.App.1993) ("in order for appellant to obtain the protection of the UMDDA, a detainer must have been filed against him"); *cf. Runck v. State*, 497 N.W.2d 74, 79 (N.D.1993) (detainer is a "necessary prerequisite" under the IAD). Assuming, without deciding, that an ineffective IAD request might be considered as a

request under the UMDDA when the prisoner is returned to North Dakota, such a request could only be valid if a detainer had been filed against Moe with the person having custody of him at the Burleigh County jail.

[¶ 20] No such detainer was filed, or could have been filed, against Moe. By definition, a detainer is a notification filed with the institution in which a prisoner is serving a sentence, advising that he faces pending criminal charges in another jurisdiction and requesting the institution to hold the prisoner or give notice when his release is imminent. *Runck*, 497 N.W.2d at 79. A detainer may only be filed when the prisoner is serving a sentence on another charge, not when he is being held on the pending charge. This result is supported by N.D.C.C. § 29-33-02(1), which requires the warden or other official having custody of the prisoner to send a certificate indicating the prisoner's term of commitment, time already served, time remaining to be served, good time earned, parole eligibility, and prior decisions of the parole board. The requirement of such a certificate indicates the Act is intended to apply only to prisoners already incarcerated within the state on other charges.

[¶ 21] We conclude the UMDDA does not apply when the prisoner is being held locally on the pending charges and no detainer has been filed. Thus, Moe did not validly invoke the UMDDA, N.D.C.C. ch. 29-33.

## IV. SPEEDY TRIAL

[¶ 22] Moe asserts the delay in the proceedings violated his right to a speedy trial under N.D. Const. Art. I, § 12, and N.D.C.C. §§ 29-01-06 and 29-19-02. In analyzing a speedy trial claim, we consider four factors: length of the delay, reason for the delay, proper assertion of the right, and actual prejudice to the accused. *State v. Murchison*, 541 N.W.2d 435, 438 (N.D.1995).

[¶ 23] The overwhelming factor in this case is Moe's failure to properly assert the right. Moe never filed a demand or request for a speedy trial after he was transferred to North Dakota. Rather, he asserts the prosecutor and court "should have known" he wanted a speedy trial from his incomplete attempts to invoke the IAD. Courts and prosecutors cannot be expected to look into the mind of the accused to discern that he intended to invoke his right to a speedy trial under the constitution and statutory provisions when he served a demand for disposition of detainers under the IAD while incarcerated in another state. Courts are not required to sift through the myriad pleadings received from prisoners to glean unexpressed requests for a speedy trial. We also note Moe failed to object when the State requested a continuance. Although the failure to object may not by itself constitute a waiver of the right to a speedy trial, it is relevant in this case in assessing whether Moe properly asserted his right.

[¶ 24] We also note that much of the delay between February 1, when Moe was brought to North Dakota, and September 12, when he pleaded guilty, was due to Moe's own conduct. Moe filed two separate motions to dismiss and a petition for a writ of habeas corpus. Much of the seven month delay was attributable to time spent resolving those motions.

[¶ 25] Moe has not demonstrated that his ability to defend against the charges was impaired by the delay. He does not assert loss of evidence or witnesses which would affect his ability to present a defense. Although he asserts the pretrial delay caused him anxiety and health concerns, *see Murchison*, 541 N.W.2d at 439, that factor does not outweigh his failure to properly assert his right to a speedy trial or his part in causing a substantial portion of the delay.

[¶ 26] We conclude Moe was not denied his right to a speedy trial.

## V. CONCLUSION

[¶ 27] We have considered the other issues raised by Moe and find them to be without merit. The judgments of conviction are affirmed.

[¶ 28] VANDE WALLE, C.J., and MESCHKE, NEUMANN, JJ., and EVERETT NELS OLSON, District Judge, concur.

[¶ 29] EVERETT NELS OLSON, District Judge, sitting in place of SANDSTROM, J., disqualified.