STATE OF NEBRASKA, APPELLEE, V. DONALD C. REYNOLDS, ALSO KNOWN AS JACK REYNOLDS, APPELLANT.

359 N.W.2d 93

Filed December 7, 1984.   No. 83-808.

Dennis R. Keefe, Lancaster County Public Defender, and Sean J. Brennan, for appellant.

Paul L. Douglas, Attorney General, and Terry R. Schaaf, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

WHITE, J.

The single issue presented in this case is whether the

Agreement on Detainers (hereinafter Agreement), Neb. Rev. Stat. §§ 29-759 et seq. (Reissue 1979), imposes upon the state seeking custody of a prisoner a duty to proceed to obtain custody of that prisoner without unreasonable delay once that state has lodged a detainer against the prisoner and requested his custody. A brief recitation of the pertinent facts and pretrial proceedings is necessary.

On September 25, 1980, the appellant was involved in an incident in which a Lincoln, Nebraska, police officer was disarmed and held prisoner. A complaint was filed on September 26, 1980, charging appellant, Donald C. Reynolds, also known as Jack Reynolds, with the crime of kidnaping. An arrest warrant was issued on that date. Subsequently, on June 18, 1982, after Reynolds had been apprehended and incarcerated in another jurisdiction, the chief deputy county attorney of Lancaster County, Nebraska, filed a request for temporary custody of Reynolds with the warden of the federal correctional institution at Lompoc, California.

On June 28, 1982, the defendant, Reynolds, completed an "Inmate Request to Staff Member" form requesting that the warden of the federal correctional institution at Lompoc "not honor the request for [his] custody to the state of Nebraska." Reynolds received a response from prison officials on July 1, 1982, informing him that it was possible for an authority to place a detainer upon him and that he could request a disposition of the pending charges. The Lancaster County attorney's office, however, heard no response from the federal authorities at Lompoc until March 21, 1983, when the county attorney's office received a letter indicating that the appellant would soon be available for custody. Soon thereafter, the defendant was released to Nebraska authorities and arrived in the state on May 6, 1983. That same day the defendant appeared in county court, where he was informed of the charges against him, the possible penalties, and his constitutional rights, and requested that a public defender be appointed to represent him. On June 1 the defendant waived his right to a preliminary hearing and was bound over to the district court. On June 24 and July 21, 1983, Reynolds filed motions to dismiss on the grounds that the Agreement had been violated,

as were his rights to a speedy trial under the U.S. and Nebraska Constitutions. On August 24, 1983, these motions were overruled. Trial to the court on stipulated facts was held on August 31, 1983. Reynolds was subsequently found guilty as charged and sentenced to a term of not less than 7 nor more than 9 years' imprisonment.

It is essentially the argument of the appellant that the trial court erred in overruling his motion to dismiss the charge against him because the State of Nebraska failed, after filing a request for temporary custody, to proceed to obtain custody of him within a reasonable time and without unreasonable delay.

The Agreement, adopted by the State of Nebraska in 1963 and to which the United States is a party, see Interstate Agreement on Detainers Act, 18 U.S.C. app. §§ 1 and 2 (1982), was designed " 'to encourage the expeditious and orderly disposition of . . . charges [outstanding against a prisoner] and determination of the proper status of any and all detainers based on untried indictments, informations or complaints.' " Art. I of the Agreement. Although the Agreement itself does not define "detainer," it is generally recognized that a detainer is a notification filed with the institution in which an individual is serving a sentence, advising the prisoner that he is wanted to face criminal charges pending in another jurisdiction. *People v Bentley*, 121 Mich. App. 36, 328 N.W.2d 389 (1982). "The provisions of the Agreement apply only when a detainer has been lodged against a prisoner who has entered a term of imprisonment in a party State." *People v. Daily*, 46 Ill. App. 3d 195, 200, 360 N.E.2d 1131, 1136 (1977); *United States v. Mauro*, 436 U.S. 340, 98 S. Ct. 1834, 56 L. Ed. 2d 329 (1978). Since "a detainer remains lodged against a prisoner without any action being taken on it," *People v McLemore*, 411 Mich. 691, 692 n.2, 311 N.W.2d 720, 721 n.2 (1981), the Agreement sets forth two procedures designed to effectuate its purpose. The machinery of the Agreement may be activated by either the prisoner or the receiving state. *People v. Daily, supra.*

Article III of the Agreement prescribes the procedure by which a prisoner against whom a detainer has been lodged may demand a speedy disposition of outstanding charges. *Johnson v. Cuyler*, 535 F. Supp. 466 (E.D. Pa. 1982).

Article III(a) of the Agreement provides in part:

"[W]henever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint . . . . The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner."

Article III(c) of the Agreement requires the warden or official having custody of the prisoner to promptly inform the prisoner of the source and contents of any untried complaint and of his right to request its final disposition. Upon receipt of a proper request for disposition under Article III, the receiving state must bring the prisoner to trial within 180 days.

Article IV of the Agreement sets forth the procedures by which the authorities in the state where the charges are pending, the receiving state, may initiate the process whereby a prisoner is returned to the state for trial. Under Article IV(a) the proper state official must present a written request for temporary custody to the appropriate authorities of the custodial or sending state.

Article IV(c) of the Agreement provides in part: " 'In respect of any proceeding made possible by this article, trial shall be commenced within one hundred twenty days of the *arrival* of the prisoner in the receiving state . . . .' " (Emphasis supplied.) See *People v Cook*, 95 Mich. App. 645, 291 N.W.2d 152 (1980).

Article V(c) of the Agreement provides:

"If the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III or Article IV hereof, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect."

Appellant concedes that the trial deadlines of the Agreement apply to only two situations, i.e., the prisoner's written demand for disposition or the prisoner's arrival in the receiving state.

It is apparent from the record that the time limitation contained in Article III was never properly triggered and that the state complied with the time limitations imposed under Article IV.

Under Article III of the Agreement, for a prisoner's demand for disposition of charges to trigger the 180-day period, it must be made in the manner therein required. See *State v. Soloway*, 603 S.W.2d 688 (Mo. App. 1980). Article III(a) establishes the two requirements which must be met before the 180-day limit can be invoked: (1) written notice of the requested disposition and (2) the requisite certificate of the officials of the incarcerating state. *State v. Bass*, 320 N.W.2d 824 (Iowa 1982). There is no evidence, nor does Reynolds contend, that he complied with Article III by giving or sending written notice and request for final disposition of the Nebraska charge to the warden of the federal correctional institution at Lompoc. The appellant did testify that while he was a prisoner in Illinois in the Du Page County jail prior to his transfer to California, he wrote a letter demanding speedy disposition of the Nebraska charges. Reynolds contends the letter was addressed to the prosecuting attorney's office in Lincoln, Nebraska. Two unnamed inmates were alleged to be witnesses. No other evidence exists that a demand for speedy disposition was made, and, as a factual matter, appellant was represented by counsel at the time of the alleged request. The record is silent as to the receipt of the alleged request. Whether Reynolds' demand for a speedy trial

was sent or received is irrelevant, since there is no contention or proof that a detainer was filed with the correctional officials in Illinois at the time of Reynolds' alleged request.

As previously stated, the speedy trial provisions of the Agreement are triggered *only* when a detainer is filed with the state where an individual is a prisoner by the state which has untried charges pending against the individual. The Agreement does not provide relief for those accused of crime in another jurisdiction and incarcerated in a party state when no detainer has been lodged. *People v. Daily*, 46 Ill. App. 3d 195, 360 N.E.2d 1131 (1977); *United States v. Mauro*, 436 U.S. 340, 98 S. Ct. 1834, 56 L. Ed. 2d 329 (1978); *People v Paulis*, 115 Mich. App. 183, 320 N.W.2d 337 (1982). Furthermore, Reynolds was repeatedly asked at trial if he had "made any other requests or demands for a quick and speedy trial regarding the charges pending against you in the state of Nebraska," to which he responded, "No."

Regarding Article IV of the Agreement, it is undisputed that the state fully complied with the literal provisions of that article. On March 21, 1983, Nebraska authorities first received notice from federal officials that Reynolds would be available to be taken into custody on or after April 20, 1983. Reynolds arrived in Nebraska on May 6, 1983, and trial was held on August 30, 1983, 116 days after his arrival pursuant to the request for temporary custody.

Appellant nevertheless urges that grounds for dismissal may exist under the Agreement, even though the time limitations of Articles III and IV have been met. The appellant urges that the Agreement should be read to impose an additional burden on the receiving state to justify any delay, such as the 11 months in this case, which elapsed between the request for custody and Reynolds' arrival in Nebraska. As authority for this proposition, the appellant cites *State v. Chirra*, 79 N.J. Super. 270, 191 A.2d 308 (1963). In that case the court dismissed charges pursuant to a detainer for a refusal on the part of the receiving state to accept custody with all reasonable diligence and dispatch, even though the state stood ready to bring the defendants to trial within 120 days of their arrival in the state. In *Chirra*, however, it appears that the prisoners in question

were readily available for a period of 27 months and that the prosecutor declined to take custody of the defendants because of a heavy court docket. In *Chirra, supra* at 278, 191 A.2d at 312, the court said:

[W]hen the prosecuting officials of a party state request temporary custody of a prisoner in another party state for trial, they must continue their effort to obtain delivery of the prisoner from the other state with all reasonable diligence and dispatch. *If the prisoner is available for transfer, his custody must be accepted by such prosecuting officials.*

(Emphasis supplied.)

In the instant case, unlike *Chirra*, the Lancaster County authorities took custody of Reynolds as soon as practicable upon learning of his availability.

The appellant also directs us to the case of *People v Bentley*, 121 Mich. App. 36, 328 N.W.2d 389 (1982), wherein the Michigan Court of Appeals dismissed charges pending against a prisoner in the receiving state for the sending state's noncompliance with Article III(c), the duty to inform the prisoner of the source and contents of any detainer lodged against him. In *Bentley*, in the context of the Interstate Agreement on Detainers, the court discussed on which party the burden should fall of showing the sending state's compliance with the terms of the agreement. The court stated at 43, 328 N.W.2d at 392:

Nothing in the IAD supports the invocation of a presumption of official compliance with the dictates of the agreement. We are persuaded by the reasoning of the Colorado appellate court which rejected the claim that a prisoner bears the burden of proving that he was not advised of a detainer lodged against him or of his right to request final disposition of the pending charges.

Quoting *People v. Lincoln*, 42 Colo. App. 512, 601 P.2d 641 (1979), *Bentley* adopted the following language: " 'We hold that the presumption that public officials perform the duties imposed on them by law in a valid and regular manner does not apply to officials of a sending state under the Agreement on Detainers.' " *Bentley* at 43, 328 N.W.2d at 392.

In determining the appropriate sanction to be imposed when officials of a sending state fail, as they did in the instant case, to promptly comply with the provisions of the Interstate Agreement on Detainers, the *Bentley* court further cited with approval the following language from *People v. Lincoln, supra*:

> "The receiving state, having set the provisions of the Agreement in motion, must bear the burden of assuring that its provisions are enforced in the sending state. If the serious consequence of dismissal results automatically from the failure of the correctional officials in the imprisoning state to comply, 'pressure [will] soon be brought to bear on the negligent officials from their administrative superiors as a result of protest from the other state.' . . ."

*Bentley* at 45, 328 N.W.2d at 393.

Appellant urges us to adopt similar language and place the burden on the receiving state to show that the sending state properly complied with Article III(c) of the Agreement and that in the absence of such a showing the charges must be dismissed.

We note, however, the court in *Bentley* emphasized that

> we do not intend by this opinion to set forth a rule of general applicability. We do not hold that the prosecutor of the receiving state must always bear the burden of the custodial state's noncompliance with Article III(c). Nor do we hold that dismissal is always the proper remedy for IAD violations. Our holding is limited to the particular facts of this case.

*Id.* at 46, 328 N.W.2d at 394.

The Agreement does not require that the additional burden of proving that the sending state promptly complied with its provisions be placed on the receiving state, nor shall we. Under the particular facts of this case the request for temporary custody was in proper form and timely. No explanation appears in the record for the federal authorities' delay in responding to the Nebraska prosecutor's "request for custody." The prosecutors in this case are blameless and helpless, in view of the seeming disregard of the law by federal authorities.

The Agreement provides for the remedy of dismissal of

charges with prejudice only in three specific cases, not including possible errors made by another party's prison officials. See *Com. v. Gonce,* 320 Pa. Super. 19, 466 A.2d 1039 (1983). Because the Legislature chose to mention specific situations when dismissal of charges is appropriate, we will not extend such relief for a custodial state's failure to promptly deliver a prisoner to the receiving state pursuant to a proper request for custody.

AFFIRMED.