STATE OF NEBRASKA, APPELLEE,
v. MARK ALLAN MEYER, APPELLANT.
588 N.W.2d 200

Filed December 15, 1998.   No. A-98-481.

Michael T. Levy for appellant.

Don Stenberg, Attorney General, and William L. Howland for appellee.

IRWIN, Chief Judge, and SIEVERS and INBODY, Judges.

SIEVERS, Judge.

## INTRODUCTION

In this opinion, we address the meaning of the phrase "unable to stand trial" found in article VI(a) of Nebraska's Agreement on Detainers (Agreement), Neb. Rev. Stat. § 29-759 (Reissue 1995). We consider whether the re-incarceration of a defendant in another state, which is unknown to the court and the prosecution, tolls the 180-day speedy trial provision con-

tained in article III(a) of the Agreement. We also consider the effect of the defendant's failure to appear for his preliminary hearing, after he has requested disposition under the Agreement of the charges pending against him.

## BACKGROUND

On April 20, 1995, Mark Allan Meyer was charged by criminal complaint in the county court for Sarpy County, Nebraska, with one count of burglary, one count of theft by unlawful taking, and one count of criminal mischief. At the time this complaint was filed in Nebraska, Meyer was incarcerated at the Iowa Medical Classification Center (Center) on a separate offense. On July 27, the Sarpy County sheriff's office mailed to the Center a request for detainer on Meyer and a copy of the arrest warrant issued by the Sarpy County Court on the criminal complaint.

On December 6, 1996, a handwritten motion entitled "Motion for Speedy Trial" was filed in the Sarpy County Court. The motion requested "an order for the Sarpy County Attorney . . . to commence criminal proceeding [sic] in the matter of the criminal complaint" filed against Meyer. The motion was signed by Meyer and was notarized. On March 24, 1997, Meyer filed a pro se "Inmate's Notice of Place of Imprisonment and Request for [Final] Disposition of Indictments, Informations or Complaints" with the Sarpy County Court. The document stated that Meyer was imprisoned at the Iowa Men's Reformatory in Anamosa, Iowa, and requested final disposition of the criminal complaint filed against Meyer on April 20, 1995.

On March 25, 1997, after being granted parole in Iowa, Meyer was released from the Iowa Men's Reformatory into the custody of the Sarpy County sheriff on the Nebraska detainer and the following day was arraigned in the Sarpy County Court on the charges of burglary, theft by unlawful taking, and criminal mischief. A preliminary hearing was set for April 10, and Meyer was released on bond.

In a letter dated March 31, 1997, Thomas J. Garvey, Meyer's attorney, advised Meyer that he was scheduled for preliminary hearing on April 10 and noted, "YOU MUST BE IN ATTENDANCE AT THIS HEARING." Meyer was asked to call upon

receipt of the letter to schedule an appointment. The record reveals that Meyer's mother, Sheila Meyer, upon receipt of the above letter on April 8, 1997, handwrote at the bottom, "FYI - Mark Meyer is being held in Johnson County Jail in Iowa City, IA - will not be able to appear - Please call them for verification. Thank you, Sheila Meyer." Sheila Meyer then faxed the letter back to Garvey at the public defender's office.

On April 10, 1997, Meyer failed to appear at his preliminary hearing, and a capias was issued for his arrest. As it turns out, on March 28, Meyer had been taken into custody in Iowa on new charges of theft, flight to avoid prosecution, and parole violation. On October 15, Meyer was sentenced on the new Iowa charges and imprisoned at the Iowa Correctional Facility in Oakdale, Iowa. In a letter filed by the Sarpy County Court on December 22, 1997, and which was addressed to "Presiding Judge," Sheila Meyer requested that her son's motion for speedy trial, dated December 6, 1996, be given prompt attention. Moreover, the letter continued:

This case has been in limbo too long. Mark is serving time in Iowa and cannot get into a program or work release until the detainer is removed. Mark wants this matter behind him and has contacted Mr. Garvey to get a court date set. . . .

. . . [W]hat is the prosecutor waiting for? This matter needs someone's attention and you are next to my last resort.

Meyer remained incarcerated in Iowa until February 3, 1998. On this date, he was arrested by the Sarpy County sheriff and brought back to Nebraska for arraignment on the April 20, 1995, complaint. On February 19, 1998, Meyer waived preliminary hearing and was bound over to the district court for Sarpy County, Nebraska, for arraignment. On March 6, Meyer entered a plea of not guilty, and a trial date was set.

On April 8, 1998, Meyer filed a motion to dismiss and a request for evidentiary hearing in the district court. The motion stated that on or about March 19, 1997, Meyer delivered to the Sarpy County Court a request that final disposition be made of the complaint against him. We assume this to be the request for final disposition, which we earlier referenced as being filed on

March 24. The motion alleged that the request was made pursuant to articles III(a) and V(c) of the Agreement, which required that he be brought to trial within 180 days after delivery of the request. The motion concluded that because Meyer had not been brought to trial within 180 days of his request that he was entitled to a dismissal of all charges against him with prejudice.

On April 30, 1998, following an evidentiary hearing, the district court denied Meyer's motion to dismiss. The court noted that "[a] close reading of Exhibit #3 [Meyer's request for disposition] shows that the Defendant was out on parole when he appeared in the County Court on March 26, 1997." The court stated that although Garvey had been alerted to Meyer's reincarceration in Iowa, per Sheila Meyer's fax, there had been "no showing that the Court or the prosecution was aware of the Defendant's whereabouts after April 10, 1997, until his re-arrest on February 2, 1998." The district court then held, "The County Court does not have the authority to dispose of felony charges. The County Court does have the authority to determine probable cause, but without the Defendant's presence, the County Court may not proceed."

Meyer appeals the denial of his motion to dismiss to this court.

## ASSIGNMENTS OF ERROR

Meyer argues on appeal that the district court erred (1) in failing to find that Meyer's right to be brought to trial within 180 days of the filing of his request for final disposition had been violated and (2) in denying Meyer's motion to dismiss pursuant to article III(a) and (d) of the Agreement. Meyer also asserts: "To the extent that it made a factual finding, the district court was clearly wrong in finding that the defendant was required to establish that the prosecution was aware of the whereabouts of the defendant between April 10, 1997 and February 2, 1998 and failed to do so."

## STANDARD OF REVIEW

■ In ruling on a motion to dismiss with prejudice based on alleged violations of the Agreement, it is proper for the trial court to hold a pretrial evidentiary hearing to determine whether

a detainer was filed against the defendant and, if a detainer was filed, to determine whether the provisions of the Agreement were violated. *State v. Williams*, 253 Neb. 619, 573 N.W.2d 106 (1997).

■ When a trial court makes pretrial factual determinations regarding the application of provisions of the Agreement, its findings of fact will not be disturbed on appeal unless clearly wrong. *Id.*

## ANALYSIS

Meyer asserts that the trial court erred in failing to grant his motion to dismiss, because the State violated the 180-day speedy trial provision contained in article III of the Agreement. The State argues, however, that the speedy trial provision is "inherently tolled when the Appellant, seeking disposition, is unavailable for trial in the jurisdiction." Brief for appellee at 7.

■ The Agreement, adopted by the State of Nebraska in 1963, was designed to encourage the expeditious and orderly disposition of charges filed in one jurisdiction against prisoners who are serving sentences in another jurisdiction. See *State v. Reynolds*, 218 Neb. 753, 359 N.W.2d 93 (1984). Article III of the Agreement prescribes the procedure by which a prisoner against whom a detainer has been lodged may demand a speedy disposition of outstanding charges. *Reynolds, supra.* Article III(a) of the Agreement provides, in pertinent part:

> [W]henever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint[.]

In determining the duration and expiration dates of the time periods provided in article III(a), the running of said time periods "shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter." Article VI(a) of the Agreement.

The fact that Meyer triggered the provisions of article III(a) on March 24, 1997, by filing his request for final disposition with the Sarpy County Court is not in dispute. In dispute, however, is whether the 180-day time limit, which began running on March 24, was tolled on April 10 when Meyer failed to appear at his preliminary hearing and, if so, when it began running again.

The determinative phrase in article VI(a) is "unable to stand trial." The Nebraska appellate courts have never interpreted this language. Thus, we turn to the federal courts and their interpretation of the Interstate Agreement on Detainers Act (IAD), 18 U.S.C. app. (1994), for guidance, because the IAD's tolling provision mirrors that found in article VI of Nebraska's Agreement.

The federal courts are somewhat divided as to the proper construction of the IAD's article VI tolling provision. The Fifth and Sixth Circuits have construed the provision narrowly, holding that the phrase "unable to stand trial" refers only to physical or mental incapacity of the defendant. See, *Birdwell v. Skeen*, 983 F.2d 1332 (5th Cir. 1993); *Stroble v. Anderson*, 587 F.2d 830 (6th Cir. 1978), *cert. denied* 440 U.S. 940, 99 S. Ct. 1289, 59 L. Ed. 2d 499 (1979). However, a majority of the federal courts have defined the "unable to stand trial" language as including within the article VI tolling provision " 'all those periods of delay occasioned by the defendant,' and specifically, 'the periods of delay occasioned by the . . . motions filed on behalf of the defendant . . . [.]' " *U.S. v. Dawn*, 900 F.2d 1132, 1136 (7th Cir. 1990), *cert. denied* 498 U.S. 949, 111 S. Ct. 368, 112 L. Ed. 2d 330. See, also, *U.S. v. Taylor*, 861 F.2d 316 (1st Cir. 1988); *United States v. Roy*, 771 F.2d 54 (2d Cir. 1985), *cert. denied* 475 U.S. 1110, 106 S. Ct. 1520, 89 L. Ed. 2d 918 (1986); *Young v. Mabry*, 596 F.2d 339 (8th Cir. 1979).

In our opinion, the majority view, which broadly interprets the IAD's tolling provision, allocates responsibility for delay where it belongs when the party asserting a right to an absolute discharge due to a violation of the speedy trial provision has in fact caused the delay. Accordingly, we adopt the position of the federal courts which have construed the phrase "unable to stand trial" to include all those periods of delay occa-

sioned by the defendant. The running of the 180-day time limitation was tolled when Meyer failed to appear at his preliminary hearing on April 10, 1997, due to his re-incarceration. This is clearly an example of a " 'delay occasioned by the defendant.' " See *State v. Borland,* 3 Neb. App. 758, 532 N.W.2d 338 (1995) (holding defendant's failure to appear at scheduled docket call tolled running of allowable 180 days under Nebraska's speedy trial statute). If Meyer had appeared for his preliminary hearing, the process to bring him to trial on the charges filed April 20, 1995, would have been able to move forward. However, the record demonstrates that Meyer's failure to appear was his fault—being arrested in Iowa on Iowa charges which resulted in his re-incarceration. *Borland, supra,* also suggests that following Meyer's failure to appear for his preliminary hearing, the 180-day clock did not begin running until he appeared in court again.

In *Borland,* the defendant failed to appear at a docket call, but upon hearing that there was a warrant for his arrest, he went to the police station to inquire and was told there was no warrant. But, we held in *Borland* that this effort did not excuse his failure to appear in court and the running of the 180 days under the Nebraska speedy trial statute, Neb. Rev. Stat. § 29-1207 (Reissue 1995), was tolled until he returned to court "willingly or unwillingly." *Borland,* 3 Neb. App. at 762, 532 N.W.2d at 341, citing *State v. McKenna,* 228 Neb. 29, 421 N.W.2d 19 (1988). The jurisprudence under the Nebraska speedy trial statute appears to be readily transferrable to the speedy trial portion of the Agreement. Thus, under *Borland, supra,* Meyer's claim would fail because he did not return to the Sarpy County Court until February 19, 1998, and as a result, the running of the 180 days would be tolled until then. However, we observe that the defendant in *Borland* was free and thereby able to return to court at will, whereas Meyer was incarcerated. Meyer's re-incarceration in Iowa would physically prevent him from getting back to the Sarpy County Court, presumably until his release from custody in Iowa. Consequently, this difference requires that we *soften* the application of *Borland, supra,* in these unique circumstances. It is apparent that Meyer could easily remedy his inability to reappear in the Sarpy County Court

by fully and completely advising the court and prosecution of his whereabouts, which would enable Sarpy County officials to "go get him" under his original request for final disposition under the Agreement. In summary, following his failure to appear for his preliminary hearing, the running of the 180 days under his first request is tolled until he reappears in court or, in the event he is unable to return to court on his own as would be the case in the event of a defendant's re-incarceration, until he fully and completely advises the court of his whereabouts. However, until he does one or the other, the running of the 180 days for speedy trial is tolled because he is "unable to stand trial" and he is the cause of the delay.

Meyer argues that because his mother notified his attorney and the public defender's office that he had been re-incarcerated in Iowa and would be unable to attend the preliminary hearing on April 10, 1997, the State was aware of his location and, thus, could have brought him to trial in Nebraska within 180 days. It is self-evident that notice to the lawyer for the accused is not notice to the prosecution and the court of the accused's whereabouts. However, the record shows that the Sarpy County Court became aware of Meyer's approximate whereabouts as of December 22, via a letter from Meyer's mother which read, "Mark is serving time in Iowa and cannot get into a program or work release until the [Nebraska] detainer is removed." The letter was filed by the clerk of the Sarpy County Court on December 22, 1997, and thus, on December 22, the court was advised of Meyer's *approximate* whereabouts following his disappearance.

However, we determine that Sheila Meyer's letter failed to fully and completely advise the court of Meyer's *exact* whereabouts. The letter is obviously indefinite on where Meyer is located within the Iowa prison system. From the letter, one cannot know whether he was in a county jail or a state facility. We refuse to put the burden on the court and the prosecution to investigate and determine precisely where within the various prisons, jails, and associated facilities in Iowa Meyer might be found so that the 180-day speedy trial provision in the Agreement can start running again. Clearly, the mother's letter did not completely and adequately advise the prosecution and

the court of Meyer's whereabouts. The purpose of the Agreement is to promote the orderly and expeditious disposition of outstanding charges against a prisoner. *State v. Reynolds,* 218 Neb. 753, 359 N.W.2d 93 (1984). The incomplete information in Sheila Meyer's letter did not accomplish these goals because Meyer's exact whereabouts were still unknown. Thus, Meyer was still "unable to stand trial" under the Agreement, notwithstanding his mother's letter of December 22, 1997, to the court.

Finally, to the extent that the district court's ruling against Meyer was premised upon the notion that Sheila Meyer's letter to the county court was inadequate because the "County Court does not have the authority to dispose of felony charges," we reject that rationale. First, as said, the letter was not sufficient for the court and the prosecution to know Meyer's whereabouts. Second, the county courts have jurisdiction to dispose of felony charges by not binding a defendant over to the district court for trial after a preliminary hearing. Moreover, Neb. Rev. Stat. § 29-760 (Reissue 1995) defines "appropriate court" under the Agreement as "any court with criminal jurisdiction in the matter involved." The last matter scheduled, and which was not completed because of Meyer's disappearance, was the preliminary hearing in county court. Thus, the county court clearly had jurisdiction. Nonetheless, a correct result will not be reversed for an incorrect rationale. *Klinginsmith v. Wichmann,* 252 Neb. 889, 567 N.W.2d 172 (1997).

Meyer's temporary disappearance without a reappearance in the Sarpy County Court; the lack of proof that the court and the prosecution were aware of his exact whereabouts after April 10, 1997; and his failure to fully advise of his whereabouts, which would incidentally explain his inability to voluntarily reappear in the Sarpy County Court, are all factors which are fatal to Meyer's claim that he is entitled to discharge because the 180 days to bring him to trial had run. The effect of each of these things, as well as when considered in combination with each other, is that the running of the 180 days was tolled because he was "unable to stand trial," because of a delay occasioned by Meyer. Any other holding would reward those who file requests for final disposition under article III of the Agreement and then

manage to disappear only to resurface after the 180 days has run.

## CONCLUSION

The 180-day speedy trial provision of the Agreement ran without interruption from March 24 to April 10, 1997, a total of 18 days. However, on April 10, due to a delay occasioned by Meyer, i.e., his disappearance and unavailability for trial due to his re-incarceration without notice to the court and the prosecution, the 180-day period was tolled until his reappearance in court on February 19, 1998, when he waived a preliminary hearing. Forty-seven days later, Meyer filed his motion for discharge on April 8, which again tolled the running of the 180 days. The time during which the motion has been pending and under litigation is all chargeable to Meyer. See *State v. Borland*, 3 Neb. App. 758, 532 N.W.2d 338 (1995). Therefore, the 180 days is far from being used up, because Meyer filed his request for disposition under the Agreement and only a total of 65 of the allowable 180 days are chargeable to the State. Upon issuance of the mandate herein, the 180-day clock will begin running again. We affirm the decision of the district court denying Meyer's motion to dismiss.

AFFIRMED.