STATE OF NEBRASKA, APPELLEE, V.
DAVID W. RIEGER, JR., APPELLANT.
695 N.W.2d 678

Filed April 19, 2005. No. A-03-670.

Jason E. Troia, of Gallup & Schaefer, for appellant.

Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.

INBODY, Chief Judge, and IRWIN and SIEVERS, Judges.

SIEVERS, Judge.
David W. Rieger, Jr., appeals from an order of the district court for Douglas County, Nebraska, denying his motion for postconviction relief which was premised on his counsel's alleged ineffectiveness in seeking Rieger's absolute discharge for the State's failure to bring him to trial within the 180 days allowed by the interstate Agreement on Detainers (IAD), codified at Neb. Rev. Stat. § 29-759 (Reissue 1995). Rieger's claim that his trial counsel failed to introduce into evidence a crucial document to show that the 180 days had run requires us to address the impact on the speedy trial count of a motion for withdrawal of counsel and appointment of new counsel. We hold that a motion for withdrawal of counsel is a motion which tolls the running of the 180-day speedy trial time.

## FACTUAL AND PROCEDURAL BACKGROUND

Rieger was convicted of robbing a supermarket in Omaha, Nebraska, on July 7, 1995. On July 10, the State had filed a complaint against Rieger, charging him with the robbery. The State later filed a detainer against Rieger on May 31, 1996, while he was an inmate at the federal prison located in Leavenworth, Kansas. On July 23, Rieger mailed notice of his place of imprisonment and his request for disposition of the outstanding robbery charge in Douglas County, as well as a certificate of inmate status, to the Douglas County Attorney by certified mail. The return receipt was signed by the prosecutor's office on July 29. An information was filed in the district court for Douglas County on September 26, again charging Rieger with robbery. Rieger filed a plea in abatement on October 1, alleging that as a matter of law, there was insufficient evidence adduced at the preliminary hearing to support a finding of probable cause to believe that a crime was committed or that he committed the same. Rieger's plea in abatement was overruled on April 3, 1997.

On May 7, 1997, upon Rieger's request, assistant public defender Jeffrey Thomas filed a motion to withdraw as Rieger's attorney due to a conflict of interest. Thomas' office had previously represented another defendant in connection with the same events, and such defendant remained a material witness in the State's case against Rieger.

On May 12, 1997, the State filed an amended information charging Rieger with robbery and being a habitual criminal. At this point, we digress to point out that while the filing of an amended information which alleges a new crime starts the speedy trial clock anew as to such new crime, see *State v. Thompson*, 10 Neb. App. 69, 624 N.W.2d 657 (2001), being a habitual criminal is not a distinct crime; rather, it denotes a status which increases penalties. See *Jones v. State*, 147 Neb. 219, 22 N.W.2d 710 (1946). Therefore, the filing of the amended information which added only alleged habitual criminal status to the information is essentially irrelevant to the speedy trial calculation we ultimately undertake.

Returning to the hearing of May 12, 1997, the motion for counsel to withdraw was heard, Thomas was allowed to withdraw

as counsel, and the court noted its intention to appoint James Regan to represent Rieger, although Regan was not at the hearing. At that same hearing, Rieger pled not guilty to the new information and the case was tentatively set for a jury trial on August 25, although the court stated that date could be moved up. The trial was later moved to August 18.

On August 5, 1997, Rieger, through his new attorney, Regan, filed a motion to discharge on the ground that he was not brought to trial within the time required by the IAD. Specifically, Rieger stated that he was not brought to trial within 180 days after he caused written notice of the place of his imprisonment and his request for final disposition of the indictment, information, or complaint to be delivered to the prosecuting officer and the appropriate court. At a hearing on August 18, three exhibits were offered and received into evidence: (1) Rieger's request for disposition, (2) the prosecutor's certification regarding the terms of transfer and custody, and (3) an affidavit from the deputy county attorney stating that the State had been ready for trial on May 12, but substitute counsel had to be appointed to represent Rieger due to the public defender's conflict of interest, and that the August 25 trial date was set to accommodate Rieger and his attorney, not the State. We digress again to point out that the record of the May 12 proceeding does not support the material allegations of the deputy county attorney's affidavit. As of May 12, no trial date had been set, and at the May 12 hearing, the court simply set the trial date of August 25 without any on-the-record consultation with the prosecution or Rieger. Moreover, attorney Regan, according to the trial judge's comments on the record, had not been contracted to be appointed, or "accommodate[d]" with a trial date, and was not present.

On August 18, 1997, the district court denied Rieger's motion to discharge, stating that while a technical computation of speedy trial time might favor Rieger, good cause had been shown for delay—Rieger had new counsel appointed at the May 12 hearing, and while the State and the court were ready to proceed, Rieger's new counsel needed time to prepare for trial. Again, we emphasize that May 12 was not a trial date and that the parties were not before the court on that date for a trial. Thus, as will become apparent, the trial court's reasons for denying the motion to

discharge are not fully supported by the record, and we do not agree with its reasoning for such denial.

The case proceeded to trial on August 18, 1997. On August 19, the jury found Rieger guilty of robbery. And, on August 22, the district court found Rieger to be a habitual criminal. Also on August 22, Rieger was sentenced to imprisonment for a period of 20 to 40 years, with 418 days' credit for time served. The district court journal reflecting the jury's verdict, the court's finding that Rieger was a habitual criminal, and the court's sentence was not effective until entered on October 8.

However, on September 16, 1997, Rieger filed a notice of appeal regarding the district court's denial of his motion to discharge, which appeal was designated in this court as case No. A-97-976. Rieger alleged that he had not been tried within 180 days of his request for disposition pursuant to the IAD. On May 15, 1998, in a "Memorandum Opinion and Judgment on Appeal," this court affirmed the judgment of the district court, but for reasons different from those the court cited in its decision. We found that Rieger's request for disposition was not accompanied by a certificate of inmate status containing the information required by article III(a) of the IAD. Therefore, we found that because Rieger's request for disposition was not made in the manner required by the IAD, it was not effective and did not "trigger" the 180-day period. While the conclusion that the 180-day time limit had not been "triggered" was correct on the record before us then, as we later explain, it is not correct in light of the more complete record which we now have before us. Nonetheless, the result in our case No. A-97-976 was correct on the record available at that time from the lower court.

In Rieger's next appeal to this court, filed November 4, 1997, we vacated the district court's sentence because the district court lacked jurisdiction at the time of sentencing insofar as the appeal from the motion to discharge was then pending in this court. Therefore, we remanded the cause for resentencing. See *State v. Rieger*, 8 Neb. App. 20, 588 N.W.2d 206 (1999). After further review, this court's decision was affirmed by the Nebraska Supreme Court on October 8, 1999. See *State v. Rieger*, 257 Neb. 826, 600 N.W.2d 831 (1999).

A resentencing hearing was held on December 10, 1999, and Rieger was sentenced to imprisonment for a period of 20 to 40 years, with 1,241 days' credit for time served, for his convictions of robbery and being a habitual criminal. Rieger appealed again, and his conviction and sentence were affirmed by the Nebraska Supreme Court on October 6, 2000. See *State v. Rieger*, 260 Neb. 519, 618 N.W.2d 619 (2000). Historically and procedurally, this brings us to the motion for postconviction relief.

Rieger filed his "Verified Motion for Postconviction Relief" on September 24, 2001. In his motion, Rieger alleged ineffective assistance of counsel and violation of his right to a speedy trial. An evidentiary hearing was held on April 25, 2002, and continued to September 23. At the evidentiary hearing, Rieger's trial counsel, Regan, testified that although the certificate of inmate status had been in his possession, he did not offer it into evidence during the hearing on the motion to discharge. Regan testified that he did not offer the certificate of inmate status at that hearing because, in his view, the request for disposition of the detainer under the IAD was not at issue; rather, he believed that only the computation of speedy trial time was at issue during the hearing.

Brent Bloom, a Nebraska attorney with a concentration in criminal law, testified as an expert witness. Bloom testified that the IAD requires the filing of two things, the request for disposition and the certificate of inmate status, in order to "trigger" the running of the 180-day speedy trial provision of the IAD. Bloom also testified that by not offering the certificate of inmate status, Regan was ineffective when making a record to show compliance with the IAD. Bloom testified that if Regan had shown compliance with the IAD, the result could have been dismissal of Rieger's case with prejudice—Bloom stated that Regan's failure to file the certificate of inmate status made no difference to the trial judge, but that had this court reached the issue on direct appeal of the denial of the motion to discharge, this court would have ruled in Rieger's favor. In summary, the claim is that had Regan merely put the certificate of inmate status into evidence, discharge would have been granted. Central to this contention is the underlying assumption that when the motion to discharge was filed on August 5, 1997, the 180 days had run.

The postconviction court filed its order on May 22, 2003, finding that Rieger failed to meet his burden of proving that he was prejudiced by Regan's failure to present the certificate of inmate status. The district court stated:

[T]he evidence establishes that Rieger himself was present with [assistant public defender] Thomas when the Court set the trial date beyond the 180-day limit and that both Rieger and Thomas tacitly acquiesced in that trial date. Additionally, the IAD specifically permits the Court to grant a continuance for good cause shown in open court with either the prisoner or his counsel present. Neb.Rev.Stat. §29-759 Art.III(a). Accordingly, the Court finds and concludes that Rieger waived his right to seek dismissal because trial did not occur within the 180-day period. Thus, the Court finds and concludes that Rieger has failed to establish that he was prejudiced by Regan's failure to present the Certificate [of inmate status] to the trial court or that the appellate court would have ruled differently when reviewing [the trial judge's] denial of Rieger's motion to discharge.

The district court also considered whether Rieger failed to establish prejudice on the alternative basis submitted by the State, i.e., good cause. The district court found that "the State's evidence supports the finding of good cause," because "[t]he State was ready to proceed and the defense was not ready to proceed in May 1997 due to [Thomas'] motion to withdraw and [the] resulting appointment of new counsel." Accordingly, the district court denied Rieger's motion for postconviction relief. Rieger now appeals.

## ASSIGNMENTS OF ERROR

Rieger alleges that the district court erred in holding that (1) he was not prejudiced by Regan's failure to offer the certificate of inmate status as evidence, because prejudice occurred when the Nebraska Court of Appeals, holding that the record failed to establish compliance with the IAD, refused to reach his arguments; (2) he waived his right to a speedy trial under the IAD; and (3) good cause existed to postpone his trial.

## STANDARD OF REVIEW

A criminal defendant requesting postconviction relief must establish the basis for such relief, and the factual findings of the district court will not be disturbed unless they are clearly erroneous. *State v. Hunt*, 262 Neb. 648, 634 N.W.2d 475 (2001). When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Id.*

Ordinarily, a trial court's determination as to whether charges should be dismissed on speedy trial grounds is a factual question which will be affirmed on appeal unless clearly erroneous. *State v. Knudtson*, 262 Neb. 917, 636 N.W.2d 379 (2001).

## ANALYSIS

Under article VI(a) of the IAD, the 180-day time period in which to try the prisoner is tolled "for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter." In *State v. Meyer*, 7 Neb. App. 963, 588 N.W.2d 200 (1998), we examined what this phrase meant, noting the absence of Nebraska authority on the point. We found a split in the case law, but we adopted the majority view that the running of the time limit was tolled by all instances of delay occasioned by the defendant. *Id.* In our May 15, 1998, "Memorandum Opinion and Judgment on Appeal" in Rieger's direct appeal from the denial of his motion to discharge, we said:

> It is apparent from our examination of the record that the certificate [of inmate status] containing the information . . . required by article III[(a) of the IAD] did not accompany Rieger's request to the prosecutor or the court. Consequently, because Rieger's request was not made in the manner required, it was not effective and did not trigger the 180-day period.

However, the record presently before us is more complete than that before this court on direct appeal of the denial of the motion to discharge. The record now shows that the certificate of inmate status was in fact sent along with the other required documents, which were received on July 29, 1996; thus, the 180-day period was in fact "triggered" on that date. The certificate was not presented as evidence to the court at Rieger's hearing on the motion to discharge; nor was it available to us in the earlier

appeal. Because the record now before us establishes that the 180-day period was in fact "triggered" on July 29, 1996, we proceed to determine whether Rieger's speedy trial rights were violated, which is the underlying predicate for his claim of ineffective assistance of counsel in this postconviction action.

*Speedy Trial and Good Cause.*
The IAD, particularly article III(a) thereof, states in part: Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, *he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint*[.]

(Emphasis supplied.) Article III(a) of the IAD also states that the request must be accompanied by

a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

As indicated above, the required certificate under article III(a) of the IAD is known as a certificate of inmate status. The Nebraska Supreme Court has said that the request and the certificate are required to "trigger" the running of the 180 days. See *State v. Reynolds*, 218 Neb. 753, 359 N.W.2d 93 (1984).

Because the IAD says in article VI(a) that tolling is determined by the court "having jurisdiction of the matter," we believe it naturally follows that we apply our speedy trial jurisprudence to the technicalities—for example, on which precise day the count begins at the outset and on which day it is stopped

for the defendant's motions. "Speedy trial time is calculated by excluding the date the information was filed, counting forward 6 calendar months, backing up 1 day, and then adding the excludable time periods to that date." *State v. Feldhacker*, 11 Neb. App. 608, 613, 657 N.W.2d 655, 661 (2003), *modified on denial of rehearing* 11 Neb. App. 872, 663 N.W.2d 143, *aff'd as modified* 267 Neb. 145, 672 N.W.2d 627 (2004). See, also, *State v. Baker*, 264 Neb. 867, 652 N.W.2d 612 (2002) (excludable period under Nebraska's speedy trial statute, Neb. Rev. Stat. § 29-1207(4)(a) (Reissue 1995), commences on day immediately after filing of defendant's pretrial motion). Rieger sent his request for disposition and the certificate of inmate status to the Douglas County Attorney by certified mail on July 23, 1996, and the return receipt was dated July 29, 1996. Thus, the 180-day count began on July 30. Counting forward 6 calendar months and backing up 1 day gives us an initial trial date of no later than January 29, 1997.

However, Rieger filed a plea in abatement on October 1, 1996, which filing constituted a "delay occasioned by the defendant"; thus, the speedy trial clock was tolled. See *State v. Meyer*, 7 Neb. App. 963, 969-70, 588 N.W.2d 200, 204 (1998). See, also, § 29-1207(4)(a) (periods of delay resulting from proceedings concerning defendant, including time from filing until final disposition of pretrial motions of defendant, including pleas in abatement, shall be excluded in computing time for trial). The plea was overruled on April 3, 1997, at which time the 180-day count resumed. The excludable time period of 184 days due to the plea in abatement must be added to the date of January 29, 1997. This would give us a new speedy trial date of August 1.

The 180-day speedy trial clock was again tolled when on May 7, 1997, Thomas filed his motion to withdraw as Rieger's attorney. The Nebraska appellate courts have never addressed whether a motion to withdraw because of a conflict of interest tolls the speedy trial clock, under either the IAD or our own speedy trial statute, § 29-1207. We now hold that such a motion does toll the running of the 180 days under the IAD. We think it obvious that as a matter of fundamental fairness, when a motion to withdraw is filed on the ground that the defendant's lawyer has a conflict of interest, no action of consequence to the

defendant can occur in the pending case until the motion is resolved. Other jurisdictions have held that counsel's motions to withdraw are pretrial motions tolling the speedy trial clock. See *U.S. v. Hammad*, 902 F.2d 1062 (2nd Cir. 1990) (delay, occasioned when court was informed by defense counsel that he intended to withdraw as counsel, was excludable under self-executing provision of federal speedy trial act for delay resulting from pretrial motion). See, also, *U.S. v. Joost*, 133 F.3d 125 (1st Cir. 1998); *U.S. v. Parker*, 30 F.3d 542 (4th Cir. 1994); *U.S. v. Driver*, 945 F.2d 1410 (8th Cir. 1991). Thomas' motion was granted on May 12; thus, there would be an excludable time period of at least 5 days due to the motion to withdraw (May 8 to 12) which must be added to the date of August 1, 1997. This produces a date of August 6, 1997, by which time Rieger's trial had to begin. Because the 180-day count was tolled for these additional 5 days, the time had not yet run when the motion to discharge was filed on August 5. The filing of Rieger's motion to discharge on August 5 tolled the speedy trial clock further until the district court resolved the motion on August 18. See *State v. Miller*, 9 Neb. App. 617, 616 N.W.2d 75 (2000). When the additional 13 days while the motion to discharge was pending before the district court are added to the previous speedy trial date of August 6, 1997, we get a new speedy trial date of August 19, 1997. Therefore, there was no speedy trial violation, because Rieger's trial began on August 18. We do not need to decide whether the grant of the motion to withdraw carries with it additional time which is necessarily or automatically excluded, because we believe that resolution of such issue would be fact specific, as well as dependent on whether counsel requested a continuance. For example, if a conflict arises 10 days before the start of the trial in a complex case, there is obviously some amount of excludable time, as the defendant is "unable to stand trial" while his new counsel prepares. See § 29-759, art. VI(a). On the other hand, if the motion is made 3 months before the trial date in a relatively simple case, then no extra time would likely be needed for counsel to prepare and the speedy trial clock would continue to run, absent a specific request for a continuance. How the cases on the margins of our examples would be resolved is a matter for another day. But, here, the trial date

was over 3 months from the withdrawal of counsel; hence, no additional excludable time is necessarily involved without evidence to justify such conclusion—which evidence is not present in this record.

We find only 5 days' excludable time for the motion to withdraw, and because of that conclusion, we must point out that we disagree with the postconviction court's finding that Rieger waived his right to a speedy trial and "tacitly acquiesced" in the August 25, 1997, trial date. We see this finding of "tacit acquiesce[nce]" to a trial date outside the speedy trial date as simply another way of saying that Rieger waived his speedy trial rights. In other words, agreement, tacit or otherwise, to a trial date outside the last date under the 180-day time limit is a waiver.

The law is well established that a defendant may waive his or her right to a speedy trial under § 29-1207 so long as he or she is properly advised of his or her right to a speedy trial and the waiver is entered voluntarily, knowingly, and intelligently. *State v. Andersen*, 232 Neb. 187, 440 N.W.2d 203 (1989). Waiver of such right is not personal to a defendant and may be done by counsel. See *State v. McHenry*, 268 Neb. 219, 682 N.W.2d 212 (2004). However, at the hearing on May 12, 1997, Thomas' motion to withdraw as defense counsel was granted; the court announced the intention to appoint Regan, who had not yet been contacted and obviously was not present; and the judge announced that trial would be set for August 25.

Although the trial court said it would try to get the trial disposed of earlier, there was absolutely nothing said, nor discussion, nor mention by anyone of speedy trial rights that could be construed as a waiver of such rights by counsel, either by Thomas before his motion to withdraw was sustained or by Rieger after he was unrepresented (remembering that Regan, the lawyer the court intended to appoint after Thomas' withdrawal, was not present). To the extent that the postconviction court's finding of waiver is based on the silence of Rieger and Thomas when the trial court announced a trial date of August 25, 1997, such conclusion is wrong. See, *State v. Johnson*, 201 Neb. 322, 268 N.W.2d 85 (1978) (defendant's failure to object when court sets trial for date after 6-month period does not constitute waiver of speedy trial rights), *overruled on other grounds, State v. Petty,*

269 Neb. 205, 691 N.W.2d 101 (2005); *State v. Soltis*, 11 Neb. App. 61, 644 N.W.2d 160 (2002). In fact, *State v. Johnson, supra*, sets forth specific guidelines for trial courts to follow when setting commencement of a trial outside the speedy trial date—which guidelines needed to be followed before the proceedings on May 12 could be construed as a waiver. *Johnson* requires specific advice to the defendant of his or her speedy trial rights and " '[a]scertain[ment] of record whether the defendant does or does not waive his [or her] right to a speedy trial and consent to the trial date set.' " 201 Neb. at 326, 268 N.W.2d at 88. This was not done on May 12. In conclusion, as a matter of law, the postconviction court erred in finding that there was a waiver by Rieger on May 12 of his right to a speedy trial.

*Ineffective Trial Counsel.*

The Nebraska Supreme Court has adopted a two-part test for proving a claim of ineffective assistance of counsel, as set forth by the U.S. Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). See *State v. Nielsen*, 243 Neb. 202, 498 N.W.2d 527 (1993). To establish that he or she was denied effective assistance of counsel, the defendant must show that counsel was deficient, meaning that counsel did not perform at least as well as a criminal lawyer with ordinary training and skill in the area. See *Strickland v. Washington, supra*. Also, the defendant must make a showing that he or she was prejudiced by the actions or inactions of his or her counsel by demonstrating with reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. See *id*. The two-part test for ineffective assistance of counsel may be addressed in any order. See *State v. Williams*, 259 Neb. 234, 609 N.W.2d 313 (2000). If it is easier to dispose of the ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. *Id*.

Attorney Regan, by his own admission, did not present the certificate of inmate status as evidence during the hearing on the motion to discharge. Expert witness Bloom testified that the IAD requires two things, the request for disposition and the certificate of inmate status. See, also, § 29-759, art. III(a) (subsection comports with court's holding in *State v. Reynolds*, 218 Neb.

753, 359 N.W.2d 93 (1984)). Bloom opined that by not offering the certificate of inmate status, Regan was ineffective when making a record to show compliance with the IAD. Bloom testified that if Regan had shown compliance with the IAD, the result could have been dismissal of Rieger's case with prejudice. See, also, § 29-759, art. V(c) ("[I]n the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III or Article IV hereof, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect"). However, because the 180-day speedy trial clock had not yet run on August 5, 1997, when the motion to discharge was filed, which in itself was a tolling motion, Rieger could not have been prejudiced by Regan's failure to present the certificate of inmate status at the August 18 hearing on the motion to discharge. However, this conclusion also presents another question about the effectiveness of Regan in his handling of the motion to discharge.

 Did attorney Regan provide deficient representation by filing the motion to discharge 2 days early—when the filing thereof had the consequence of extending the speedy trial clock while the motion was pending, and ultimately of extending it to a date 1 day after the trial had begun? As we earlier observed, neither the Nebraska Supreme Court nor this court has previously addressed whether a motion of counsel to withdraw would be considered "delay occasioned by the defendant" so as to toll the speedy trial clock under the IAD. See *State v. Meyer*, 7 Neb. App. 963, 969-70, 588 N.W.2d 200, 204 (1998). Nor have we addressed how long such tolling would last. Given the lack of Nebraska authority on such point, which is one of several crucial turning points in our analysis, and given that there is a split of authority on what "unable to stand trial" means under article VI(a) of the IAD, we cannot say that Regan was ineffective for not anticipating in 1997 how we would decide the issue in 2005. Similarly, in *State v. Billups*, 263 Neb. 511, 641 N.W.2d 71 (2002), we said that the failure to anticipate change in existing law does not amount to ineffective assistance

of counsel. And, in *Kornahrens v. Evatt*, 66 F.3d 1350, 1360 (4th Cir. 1995), the Fourth Circuit stated, "[T]he case law is clear that an attorney's assistance is not rendered ineffective because he failed to anticipate a new rule of law." See, also, *Brown v. U.S.*, 311 F.3d 875 (8th Cir. 2002). Additionally, we cannot say that a criminal lawyer with ordinary training and skill in the area would be able to anticipate that an appellate court would reject the trial court's finding of waiver, but still add 5 days onto the speedy trial count because of a counsel's motion to withdraw.

## CONCLUSION

While our analysis of the speedy trial issue is different from the district court's analysis, we affirm the district court's result. See *Boettcher v. Balka*, 252 Neb. 547, 567 N.W.2d 95 (1997) (proper result will not be reversed merely because it was reached for wrong reasons; where record demonstrates that decision of trial court is correct, although such correctness is based on different ground from that assigned by trial court, appellate court will affirm). For the reasons stated above, we find that Rieger's right to a speedy trial under the IAD was not violated, because the 180-day speedy trial period had not yet run when Rieger's trial began on August 18, 1997, insofar as the last day to begin such trial was August 19. Therefore, Rieger's ineffective assistance of counsel claim in this postconviction proceeding has no merit.

AFFIRMED.